A99A0536. GENTRY v. THE STATE.
(513 SE2d 528)

ANDREWS, Judge.

Mitchell Neal Gentry appeals from the judgment of conviction and sentence entered on jury verdicts finding him guilty of: two counts of homicide by vehicle in the first degree, serious injury by vehicle, driving under the combined influence of alcohol and cocaine, reckless driving, no proof of insurance, and the use of a license plate

for the purpose of concealing or misrepresenting the identity of a vehicle.

1. Gentry claims the evidence was insufficient to support his conviction on the two counts of homicide by vehicle and on the counts for serious injury by vehicle and reckless driving.

In support of the two counts of first degree homicide by vehicle, the State produced evidence that Gentry operated his vehicle in violation of OCGA § 40-6-391 (a) (4) while under the combined influence of alcohol and cocaine to the extent that it was less safe for him to drive, and that his operation of the vehicle caused a collision with another vehicle in which two passengers in Gentry's vehicle died. Evidence showed that, while Gentry operated his vehicle under the influence of alcohol and cocaine, he lost control of the vehicle as he was speeding and attempting to pass a vehicle in a no-pass zone. Gentry's out of control vehicle spun across the center line and collided with another vehicle in the oncoming lane of traffic. Both passengers in Gentry's vehicle, Sandra Fair and Anthony Shropshire, were killed in the collision. The driver of the other vehicle in the collision, Emerson Bennett, suffered multiple fractures of the pelvis, ribs and leg. His injuries required two surgical procedures and will probably require additional hip replacement surgery.

Tests conducted at the State Crime Lab on blood and urine samples given by Gentry shortly after the collision showed a blood alcohol concentration of .11 grams from the urine sample and .12 grams from the blood sample. Additional testing showed that Gentry's blood sample tested positive for the presence of a metabolite of cocaine, and his urine sample tested positive for cocaine and a cocaine metabolite. A forensic toxicologist from the State Crime Lab testified that the tests showed Gentry had ingested cocaine from one and a half to six hours prior to when the samples were drawn after the collision. An emergency medical technician who arrived at the accident scene shortly after the collision testified that an odor of alcohol was on Gentry's breath, that Gentry's pupils and slowness of verbal response showed possible signs of intoxication, and that Gentry said he had consumed "several vodkas."

An accident reconstructionist testified for the State that, based on evidence gathered from the collision scene, Gentry's vehicle was traveling between 74 and 81 mph when it spun out of control, and that the high rate of speed was a factor in Gentry's loss of control over the vehicle. The posted speed limit at that location was 55 mph. Gentry testified and admitted that he had been drinking alcohol and had ingested cocaine prior to the collision, although he denied that either substance affected his driving. Gentry also admitted he was speeding and attempting to pass in a no-pass zone when he lost control of the vehicle, but he claimed that he lost control solely because

the brakes malfunctioned by locking when he attempted to slow down.

Evidence that Gentry was driving under the influence of alcohol and cocaine, along with evidence that the fatal collision occurred when he lost control of the vehicle while traveling at a high rate of speed in excess of the posted speed limit, was sufficient to allow the jury to conclude that Gentry was a less safe driver as a result of the influence of the alcohol and cocaine. "Evidence as to the manner of driving, including excessive speed, may be taken into account where there is evidence that the defendant has been drinking, for the purpose of determining whether or not his manner of driving shows him to have been affected by the intoxicant to the extent that he drives less safely and carefully than he might otherwise have done, and for this purpose evidence of travel in excess of the legal rate of speed may be considered." (Citations and punctuation omitted.) *Duggan v. State*, 225 Ga. App. 291, 293-294 (483 SE2d 373) (1997). The evidence was also sufficient to support the jury's conclusion that, without malice aforethought, Gentry caused the collision and the resulting death of his two passengers through violation of OCGA § 40-6-391 (a) (4) by driving his vehicle under the combined influence of alcohol and cocaine to the extent that it was less safe for him to drive. OCGA § 40-6-393; *Mote v. State*, 212 Ga. App. 551, 552-553 (442 SE2d 799) (1994).

Although Gentry testified that a brake malfunction caused the fatal collision, the evidence presented in support of the theory that the brakes improperly locked and caused the collision was purely speculative. The State, on the other hand, produced evidence that inspection of the brakes after the collision showed no mechanical defects. The evidence as to the cause of the collision, though circumstantial, was sufficient to exclude every reasonable hypothesis except that of guilt, and was sufficient to support the jury's conclusion that Gentry was guilty beyond a reasonable doubt of both counts of vehicular homicide in the first degree. *Dobson v. State*, 222 Ga. App. 331, 332 (474 SE2d 630) (1996); *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

The evidence was also clearly sufficient for the jury to conclude beyond a reasonable doubt that Gentry was guilty of: reckless driving (OCGA § 40-6-390), causing serious bodily injury to the driver of the other vehicle in the collision through the violation of § 40-6-391 (OCGA § 40-6-394), and driving under the combined influence of alcohol and cocaine to the extent that he was a less safe driver (OCGA § 40-6-391 (a) (4)).

2. Gentry claims that he was prejudiced by the court's failure to redact a dismissed count from the indictment used by the jury during its deliberations.

In Count 1 of the indictment, the State charged Gentry with possession by ingestion of cocaine. The State's evidence in support of this charge was the blood and urine test results obtained pursuant to the implied consent notice given to Gentry after the accident. This count was dismissed after the trial court correctly ruled that Gentry's consent to the testing done pursuant to the implied consent notice did not constitute additional consent for the State to test his blood and urine for the purpose of establishing evidence to support a criminal prosecution for possession of cocaine. *State v. Lewis*, 233 Ga. App. 390, 393 (504 SE2d 242) (1998).

After the jury rendered a verdict finding Gentry guilty of Counts 2 through 16 of the indictment,[1] the trial court noted that the dismissed Count 1 had inadvertently not been redacted from the indictment sent out with the jury. The record shows that the trial court charged the jury to consider only Counts 2 through 16 and not to be concerned with Count 1. Although the record shows that the jury did not render a verdict as to Count 1, the jury foreman stated that the jury did discuss unredacted Count 1.

Under the circumstances, we find no prejudice to Gentry requiring reversal. By virtue of other counts in the indictment and the evidence supporting them, the jury was already aware that the State contended Gentry ingested cocaine. Moreover, the indictment itself was not evidence and the jury was so instructed. It is highly probable that any error in the failure to redact Count 1 from the indictment did not contribute to the verdict. *Johnson v. State*, 238 Ga. 59, 60-61 (230 SE2d 869) (1976).

3. Gentry contends that a member of the jury engaged in misconduct during deliberations that prejudiced his right to a fair trial and requires reversal of his convictions.

After the conclusion of the trial, one of the jurors revealed to the prosecutor that he used a toy "matchbox" car he had brought from home, along with a Styrofoam coffee cup which was in the jury room, to briefly illustrate to the other jurors the collision between Gentry's vehicle and the vehicle driven by Bennett. Since a defendant has a right to be confronted with all the evidence against him, it is improper for the jury to conduct tests or experiments during deliberations which have the effect of producing evidence not introduced at trial. *Williams v. State*, 252 Ga. 7, 8-9 (310 SE2d 528) (1984); *Watkins v. State*, 237 Ga. 678, 683-685 (229 SE2d 465) (1976); *Smith v. State*, 122 Ga. 154 (50 SE 62) (1905). Any such test or experiment which has the effect of exposing the jury to new evidence is improper and

---

[1] The trial court subsequently merged various of the counts on which Gentry was found guilty.

will require the grant of a new trial if the new evidence is so prejudicial that the verdict must be deemed inherently lacking in due process. *Williams*, 252 Ga. at 8-9. On the other hand, it is not improper for the jury to use its common experience to conduct illustrations or experiments which merely examine or verify evidence admitted during the trial. An object, not itself admitted into evidence, used by a juror as a model to illustrate trial evidence during jury deliberations does not necessarily expose the jury to new evidence, although it could conceivably have that effect depending on the object and its use under the circumstances. The use of an object by the jury may constitute no more than a common sense illustration of the evidence admitted at trial. See Annotation, Propriety of Juror's Tests or Experiments in Jury Room, 31 ALR 4th 566 (1984).

In the present case, we find no basis for concluding that the brief use of the toy car and the coffee cup to illustrate the collision improperly exposed the jury to new evidence. Moreover, the State produced affidavits from nine of the twelve jurors stating that their verdicts were based solely on the evidence produced at the trial and not on the illustration of the collision.

4. Gentry contends that the trial court erred by admitting the results of the blood and urine tests showing his blood alcohol level and the presence of cocaine in his blood because the manner in which the arresting officer read the notice to him changed its substance.

We find no error in the trial court's admission of the blood and urine tests consented to by Gentry after he was given the implied consent notice set forth in OCGA § 40-5-67.1. The amended version of § 40-5-67.1 (b), which applies retroactively to the present case, states that the notice "shall be read in its entirety but need not be read exactly so long as the substance of the notice remains unchanged." *State v. Moncrief*, 234 Ga. App. 871, 872-873 (508 SE2d 216) (1998). After the officer demonstrated at trial how he read the notice to Gentry from a card containing the statutory language, Gentry objected that the officer's testimony did not exactly track the language of the statutory notice. However, the amended trial transcript corrects the only change from the statutory notice raised by Gentry on appeal.

5. The State presented additional evidence, which Gentry does not challenge on appeal, sufficient to prove beyond a reasonable doubt that he was guilty of the offenses of driving with no proof of insurance (OCGA § 40-6-10) and using a license plate for the purpose of concealing or misrepresenting the identity of a vehicle (OCGA § 40-2-5).

*Judgment affirmed. McMurray, P. J., and Ruffin, J., concur.*

DECIDED MARCH 8, 1999.

*Billington & Associates, Donna L. Bearden*, for appellant.
*T. Joseph Campbell, District Attorney*, for appellee.