A10A0085. DIXON v. THE STATE.
(693 SE2d 900)

MIKELL, Judge.

Following a jury trial, Robert Hampton Dixon was found guilty of rape (OCGA § 16-6-1), kidnapping with bodily injury (OCGA § 16-5-40), and aggravated assault (OCGA § 16-5-21). He was acquitted of aggravated sodomy (OCGA § 16-6-2). Dixon's motion for an out-of-time appeal was granted, and he appeals from his conviction and from the denial of his amended motion for new trial. Finding no error, we affirm.

On appellate review of a criminal conviction, we view the evidence in the light most favorable to the jury's verdict, and the defendant no longer enjoys the presumption of innocence.[1] We do not weigh the evidence or judge the credibility of witnesses, but determine only if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the offenses charged beyond a reasonable doubt.[2]

So viewed, the evidence shows that in June 2002, 26-year-old Melissa Battaglia was staying at a hotel in the Atlanta area while vacationing with two friends. In the early morning hours of June 16, 2002, while her friends were out at a club and Battaglia was by herself, she left her room, carrying only her room key, to go get a soda. Upon her return, she found herself locked out of her hotel room when her room key failed to function. She went to the front desk to ask for a replacement room key, but the clerk would not give her one because her name was not on the hotel registration. She then returned to her room to try the key again. When the key would not work, she waited

---

[7] See id.

[1] *Al-Amin v. State*, 278 Ga. 74 (1) (597 SE2d 332) (2004).

[2] Id., citing *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

in front of the hotel room, hoping her friends would return.

Battaglia saw Dixon nearby, and she explained to him that she had locked herself out of her room. Battaglia testified that Dixon offered to let her use his telephone; that she went with him to his room to use his phone; but that she was unable to reach her friends. Dixon then asked Battaglia to have sex with him. She told him no, and she attempted to leave the hotel room. When she was half-way out the door, Dixon told her she "wasn't going anywhere" and started pulling her back into the room. Battaglia testified that she was screaming, yelling, and pleading; that Dixon slammed his body against the door several times; that her arm was wedged in the door and he was slamming the door on her arm; and that she was unable to free herself. Dixon managed to shut and lock the door; he then threw Battaglia on the bed. He told her not to scream and threatened to kill her, while holding a razor against her forehead and throat. He bound her wrists together tightly with a cord from an iron, spread her legs apart and stuck his tongue in her vagina, then climbed on top of her and forced his penis into her vagina. Dixon told Battaglia that she could not leave and that he was going to kill her.

Another man then entered the hotel room. Battaglia told the men that she was going to her room to see if her friends had returned, and she left Dixon's room. Dixon insisted on walking with her. When Battaglia saw another woman enter Dixon's hotel room, she fled to the front desk, where she informed the clerk that she had been raped, that she was in fear of her life, and that she needed to call the police.

Police were summoned to the scene, and one of the responding officers, Sergeant Arthur Utset of the Norcross Police Department, testified that when he arrived, Battaglia was crying and upset; that she had an injury to her left arm that looked like a sharp hit from some sharp edge; and that her arm was puffy and painful. A subsequent "rape kit" examination revealed that vaginal swabs collected from the victim contained sperm that matched Dixon's DNA.

At trial, Dixon testified in his own behalf. He admitted having sex with Battaglia but maintained that the sex was consensual.

1. Dixon contends that the evidence was insufficient to sustain his conviction for kidnapping, because the state failed to establish the essential element of asportation. We disagree.

At the time of Dixon's trial, OCGA § 16-5-40 (a) provided that "[a] person commits the offense of kidnapping when he abducts or steals away any person without lawful authority or warrant and holds such person against his will."[3] In order to determine whether the

---

[3] OCGA § 16-5-40 (a) (2004).

movement of the victim constituted sufficient asportation under the kidnapping statute, we apply the test set forth by our Supreme Court in *Garza v. State*.[4] This test assesses four factors:

> (1) the duration of the movement; (2) whether the movement occurred during the commission of a separate offense; (3) whether such movement was an inherent part of that separate offense; and (4) whether the movement itself presented a significant danger to the victim independent of the danger posed by the separate offense.[5]

The purpose of this test is to determine "whether the movement in question is in the nature of the evil the kidnapping statute was originally intended to address,"[6] that is, movement serving substantially to isolate the victim from protection or rescue;[7] or whether the movement is "merely a criminologically insignificant circumstance attendant to some other crime."[8]

Assessment of the factors set forth in *Garza* leads us to conclude that the evidence in this case was sufficient to establish the asportation element of the crime of kidnapping. While it is true that the duration of the movement in this case was minimal, the movement occurred before the aggravated assault occurred (when Dixon threatened Battaglia's life with a razor) and before the rape occurred, and the movement was not an inherent part of either of those separate offenses.[9] Also, the asportation that occurred here presented a significant danger to the victim independent of the danger posed by the other offenses. It served to isolate her from contact with other guests in the hotel, who might have been able to provide help; and it further enhanced Dixon's control over her.[10]

---

[4] 284 Ga. 696, 701 (1) (670 SE2d 73) (2008).

[5] (Citation omitted.) Id. at 702 (1). After *Garza*, the kidnapping statute was amended by the Georgia legislature. The amendment applies to crimes committed on or after July 1, 2009. *Horne v. State*, 298 Ga. App. 601, 603 (1), n. 1 (680 SE2d 616) (2009). Because the crime in this case occurred in June 2002, the amended statute is not applicable and therefore the standard in *Garza* applies. See id.; *Payne v. State*, 301 Ga. App. 515, 518 (1), n. 1 (687 SE2d 851) (2009).

[6] (Citation omitted.) *Garza*, supra.

[7] Id.

[8] (Citation and punctuation omitted.) Id.

[9] See *Dixon v. State*, 300 Ga. App. 183, 184-185 (1) (684 SE2d 679) (2009) (dragging captive employee outside restaurant to back parking lot constituted asportation, because movement was not merely incident to completion of armed robbery and thus was not an inherent part of the armed robbery). Compare *Garza*, supra at 703-704 (2) (no asportation where victim fell to floor and then rose to sit in chair, because both movements occurred during the course of and were an inherent part of defendant's false imprisonment of the victim).

[10] See *Henderson v. State*, 285 Ga. 240, 245 (5) (675 SE2d 28) (2009) (though movement of victims from one room to another within duplex was of minimal duration, it created additional danger to the victims by enhancing the gunmen's control over them and isolating them from protection or rescue), citing *Garza*, supra.

Viewed in the light most favorable to the verdict, we conclude that the evidence was sufficient for a rational trier of fact to find Dixon guilty beyond a reasonable doubt for the crimes for which he was convicted, under the standard set forth in *Jackson v. Virginia*.[11]

2. Dixon asserts that the trial court erred in denying his motion for new trial on the ground that in light of *Garza*,[12] the court improperly charged the jury concerning the asportation requirement for the offense of kidnapping with bodily injury.

At Dixon's trial, the trial court gave the following instruction to the jury on the asportation element of the kidnapping charge:

> Ladies and gentlemen, I charge you that to prove abduction, the State must prove the element of asportation. Asportation means carrying away. Only the slightest movement of the victim is required to constitute the necessary element of asportation. There is no minimum amount of time that an alleged victim must be held to constitute kidnapping.

The charge given was a correct statement of law at the time of Dixon's trial, which took place in September 2004.[13] As discussed in Division 1 above, however, under our Supreme Court's 2008 decision in *Garza*, the asportation required to support a kidnapping conviction must consist of more than "slight movement."[14] Applying *Garza* to the case before us, we conclude that the trial court erred in charging the jury that "the slightest movement" was sufficient to prove asportation.

We note that Dixon did not object to this charge, and the failure to object to the charge constitutes waiver of the objection on appeal.[15] Nonetheless, "where there has been substantial error in the charge which was harmful as a matter of law, depriving the defendant of a fair trial, we must consider and review the charge regardless of whether an objection was made."[16] Thus, the issue becomes whether this instruction was harmful error requiring reversal of Dixon's conviction and a new trial. We do not find substantial error in this case because the charge did not render Dixon's trial unfair.

> The standard for weighing nonconstitutional error in criminal cases is known as the "highly probable test," i.e., that it

---

[11] Supra.

[12] Supra.

[13] See *Abernathy v. State*, 299 Ga. App. 897, 902 (2) (685 SE2d 734) (2009).

[14] (Punctuation omitted.) *Garza*, supra at 702 (1).

[15] *Diaz v. State*, 239 Ga. App. 795 (2) (522 SE2d 242) (1999).

[16] (Footnote omitted.) *Lester v. State*, 262 Ga. App. 707, 708 (1) (586 SE2d 408) (2003). See OCGA § 5-5-24 (c).

is "highly probable that the error did not contribute to the judgment." Under that test, a reversal is not required if the evidence of guilt is overwhelming in that there is no reasonable probability that the verdict of the jury would have been different in the absence of this error.[17]

The victim testified at trial as to Dixon's forcing her from the door of the hotel room to the bed inside the room. As we discussed in Division 1 above, this testimony was evidence from which the jury could find the asportation element of the kidnapping charge under the *Garza* standard. In light of this evidence, we conclude that it is highly probable that the trial court's error in charging the jury that "the slightest movement" is sufficient to prove asportation did not contribute to the judgment.[18] Accordingly, the erroneous instruction to the jury does not require reversal of Dixon's conviction for kidnapping with bodily injury.

3. In his fourth enumeration of error, Dixon argues that the trial court erred in denying his motion for mistrial on the ground that the victim's testimony improperly placed his character in issue. During the state's direct examination of Battaglia, when the prosecuting attorney asked Battaglia if Dixon had threatened to kill her during his attack on her, Battaglia responded, "He told me that he was going to kill me. He told me that he'd done it before and that he had no problem doing it."

Dixon's counsel objected to this statement and, out of the presence of the jury, moved for a mistrial, contending that this testimony improperly placed Dixon's character in evidence and that this statement, allegedly made by Dixon, had not been disclosed by the state to Dixon's counsel. Prosecuting counsel stated that she had learned of this statement only 20 minutes earlier and that she had advised the witness not to go into it until counsel had a chance to bring it up before the judge outside the presence of the jury. After argument, the trial judge denied Dixon's motion for mistrial. Upon the jury's return, the trial court gave a curative instruction, advising the jury to disregard entirely the witness's statement, attributed to Dixon, that he had done it before, and to let it play no part in their deliberations whatsoever. Dixon agreed to the court's curative instruction. After the instruction had been given, Dixon renewed his motion for mistrial, which the trial court again denied.

"A trial court has wide discretion in deciding whether to grant a mistrial, and that discretion should not be disturbed unless a

---

[17] (Citation and footnote omitted.) *Shirley v. State*, 259 Ga. App. 503, 505 (578 SE2d 163) (2003).

[18] See *Abernathy*, supra.

mistrial is essential to the preservation of the right to a fair trial."[19] OCGA § 24-9-20 (b), as in effect at the time of trial, provided that "no evidence of general bad character or prior convictions shall be admissible [in a criminal case] unless and until the defendant shall have first put his character in issue."[20] In this case, however, in light of the direct evidence given by Battaglia, it is highly likely that this evidence did not contribute to the verdict.[21] Moreover, the statement in this case "was clearly admissible as part of the res gestae even if such evidence incidentally placed [Dixon's] character in evidence."[22]

To the extent that Dixon argues that the state engaged in prosecutorial misconduct, we note that in order to support such a charge, Dixon "must point to evidence that the prosecutor intentionally solicited the improper comment from the witness."[23] Dixon has not done so. We conclude that the evidence does not indicate that counsel for the state improperly solicited Battaglia's statement, and therefore there was no prosecutorial misconduct in this case. Moreover, the statement was not responsive to the question posed by state's counsel; and "a nonresponsive answer that impacts negatively on a defendant's character does not improperly place the defendant's character in issue."[24] Even if it did, "the decision to give curative instructions to the jury rather than grant the mistrial request following the introduction of bad character evidence is within the discretion of the trial court."[25] We discern no abuse of discretion here.

---

[19] *Stokes v. State*, 272 Ga. App. 721, 722 (613 SE2d 225) (2005) (witness stated that defendant had just gotten out of jail). Accord *Mister v. State*, 286 Ga. 303, 306 (3) (687 SE2d 471) (2009) (accomplice's statement that he and defendant were "running around robbing people") (punctuation omitted).

[20] OCGA § 24-9-20 was amended effective July 1, 2005, to eliminate the language in subsection (b) quoted above. Ga. L. 2005, pp. 20, 27, 29, §§ 14, 17.

[21] See *Weems v. State*, 269 Ga. 577, 579-580 (3) (501 SE2d 806) (1998) (defendant's statement to investigating officer that he had been smoking marijuana-laced cigars was inadmissible as placing defendant's character in issue, but erroneous admission of this evidence did not require reversal where it was highly probable that it did not contribute to the verdict).

[22] (Punctuation and footnote omitted.) *Mathis v. State*, 299 Ga. App. 831, 835 (1) (c) (i) (684 SE2d 6) (2009) (testimony that defendant said "he wasn't going back to jail" as he fled scene of bank robbery was admissible as part of res gestae). Accord *Kellibrew v. State*, 239 Ga. App. 783, 786 (3) (521 SE2d 921) (1999) (shooting victim's testimony that defendant said he "can't go back to jail" immediately before the shooting was admissible as part of res gestae, even if it incidentally placed defendant's character in evidence).

[23] (Citation, punctuation and footnote omitted.) *Kim v. State*, 298 Ga. App. 402, 403-404 (2) (680 SE2d 469) (2009) (evidence supported trial court's finding that prosecutor did not solicit witness's improper comment).

[24] (Citation and punctuation omitted.) *Banks v. State*, 281 Ga. 678, 682 (3) (642 SE2d 679) (2007). Accord *Mister*, supra.

[25] (Citations, punctuation and footnote omitted.) *Kim*, supra at 404 (2).

4. In his sixth enumeration of error, Dixon, who is African-American, contends that the state exercised its peremptory jury strikes in a racially discriminatory manner, and therefore that the trial court erred in denying his challenge to the composition of the jury under *Batson v. Kentucky*.[26] After the state used four of its peremptory strikes to remove the only four black females in the panel of prospective jurors, the trial court ruled that Dixon had established a prima facie case of racial discrimination in the state's use of peremptory strikes.[27] The court then required the state to give race-neutral explanations for each of its strikes. After the trial court heard the state's responses, and after hearing from Dixon's counsel, the trial court found that the challenged strikes were made for race-neutral reasons and denied Dixon's *Batson* motion.

The trial court's ruling on a *Batson* motion "rests largely upon assessment of the prosecutor's state of mind and credibility; it therefore lies peculiarly within a trial judge's province."[28] Thus, on appellate review of a *Batson* ruling, "[t]he trial court's factual findings must be given great deference and may be disregarded only if clearly erroneous."[29]

Once the defendant makes a prima facie case of racial discrimination in the use of peremptory strikes, the state is required to produce a reason for those strikes which is "race-neutral, case-related, clear and reasonably specific."[30] However, "we must bear in mind that the prosecutor's explanation need not justify a challenge for cause."[31] In the case at bar, the reasons given by the prosecutor for the state's strikes have previously been ruled sufficient to overcome a prima facie case of discrimination. Two of the four potential jurors were struck because they had close relatives who had committed felonies and had served time in prison.[32] The third juror was struck because she worked for and volunteered for a nonprofit organization which provided aid to imprisoned mothers and their children. The prosecutor explained that this prospective juror's views towards people who are incarcerated might be biased as a

---

[26] 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986).

[27] See *Mayes v. State*, 279 Ga. App. 499 (1) (631 SE2d 724) (2006) (three-step test for evaluating a *Batson* challenge).

[28] (Citation and punctuation omitted.) *Jackson v. State*, 220 Ga. App. 98, 99 (469 SE2d 264) (1996).

[29] (Citation and punctuation omitted.) Id.

[30] (Citation and punctuation omitted.) *Roberts v. State*, 282 Ga. 548, 550 (5) (651 SE2d 689) (2007).

[31] (Punctuation omitted.) *Jackson*, supra, 220 Ga. App. at 98-99.

[32] See id. at 99 (juror had a cousin who was prosecuted for murder); *Cook v. State*, 199 Ga. App. 14, 15 (1) (404 SE2d 128) (1991) (jurors had close relatives who had been subjects of criminal prosecutions); *Kincey v. State*, 191 Ga. App. 300 (1) (381 SE2d 439) (1989) (jurors had close relatives who had been convicted of committing felonies).

result of her volunteer work and her employment in that area, and that she might be sympathetic toward people charged with crimes or in prison. Such a potential bias on the part of a juror is a gender- and race-neutral reason for the prosecutor's exercise of the peremptory strike.[33] The fourth juror was struck because she had been charged with the offense of vehicular homicide, although the charges against her had later been dismissed. The prosecutor believed she might be biased by her experience with law enforcement. Again, the prosecutor's explanation was gender- and race-neutral.[34]

We conclude that the trial court in this case correctly found that the state presented legitimate reasons for exercising its peremptory challenges[35] and that the state's exercise of its peremptory strikes was not aimed at purposeful discrimination.[36] Thus, the trial court's denial of Dixon's *Batson* motion was not erroneous and must be affirmed.

5. In his seventh enumeration of error, Dixon argues that the trial court erred in failing to grant his motion for new trial on the ground that the jury conducted unauthorized and improper experiments during its deliberations. At the new trial hearing, Dixon's trial counsel testified that after the jury's verdict was announced and the trial in this case ended, he spoke to two of the jurors, who told him that during the deliberations, the jurors used string to bind the wrists of one of the jurors, in order to see whether or not the string left marks or bruising on the wrists. Counsel further testified that he recalled seeing faint marks on the juror's wrist at that time.

Because "a defendant has a right to be confronted with all the evidence against him, it is improper for the jury to conduct tests or experiments during deliberations which have the effect of producing [new] evidence not introduced at trial."[37] In order to set a jury verdict aside, however, the jury misconduct must have been so prejudicial that the verdict is deemed to be inherently lacking in due process.[38] Further,

> it is not improper for the jury to use its common experience
> to conduct illustrations or experiments which merely exam-

---

[33] See *George v. State*, 262 Ga. 436, 437 (2) (421 SE2d 67) (1992) (juror had counseled inmates in jail).

[34] See *Jones v. State*, 226 Ga. App. 428 (1) (a) (487 SE2d 62) (1997) (juror had been treated unfairly by police).

[35] See *Kincey*, supra at 301 (1).

[36] See *Cook*, supra.

[37] (Citations omitted.) *Gentry v. State*, 236 Ga. App. 820, 823 (3) (513 SE2d 528) (1999).

[38] *Gentry*, supra at 823-824 (3). Accord *Holcomb v. State*, 268 Ga. 100, 103 (2) (485 SE2d 192) (1997). See also *Watkins v. State*, 237 Ga. 678, 683 (229 SE2d 465) (1976) (new trial ordered where two jurors made unauthorized visit to crime scene and gathered evidence which they shared with other jurors).

ine or verify evidence admitted during the trial. . . . The use of an object by the jury may constitute no more than a common sense illustration of the evidence admitted at trial.[39]

In this case, we find no basis for concluding that the experiment allegedly conducted by the jurors during deliberations influenced the jury in a manner harmful to Dixon's cause. During the trial, Dixon's counsel argued to the jury that if Battaglia's wrists had been bound with an electrical cord, as she testified, then the cord would have left marks on her wrists. The experiment showed that a cord tied around the wrists does leave marks, so the experiment would have supported Dixon's arguments. Thus, we conclude that the alleged experiment was not "so prejudicial that the verdict must be deemed inherently lacking in due process."[40] This enumeration is without merit.

6. In his remaining enumerations of error, Dixon contends that his trial counsel rendered ineffective assistance by failing to object to the court's charge on asportation and by failing to move for a mistrial when the prosecutor improperly commented on Dixon's right to remain silent.

In evaluating a claim of ineffective assistance of counsel, the two-prong test set forth in *Strickland v. Washington*[41] applies. Dixon "must show that counsel's performance was deficient and that, but for that deficient performance, there is a reasonable probability that the outcome of his trial would have been different."[42] "In ruling on an ineffectiveness claim, this Court need not analyze the deficient performance prong if the Court determines the prejudice prong has not been satisfied."[43] On appellate review of the trial court's ruling, "[w]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts."[44]

(a) Dixon complains that trial counsel was ineffective for failing to object to the trial court's jury charge concerning the asportation element of the kidnapping charge, based on *Garza*.[45] Because the *Garza* decision was handed down after the trial in this case, however,

---

[39] (Citation omitted.) *Gentry*, supra at 824 (3).

[40] (Citation omitted.) Id.

[41] 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

[42] (Footnote omitted.) *Jackson v. State*, 282 Ga. 494, 497 (2) (651 SE2d 702) (2007).

[43] (Footnote omitted.) *Fortson v. State*, 280 Ga. 435, 436 (2) (a) (629 SE2d 798) (2006).

[44] (Citation and punctuation omitted.) *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003).

[45] Supra.

it cannot be used to support an ineffective assistance of counsel claim. "Failure to make a meritless objection does not amount to ineffective assistance of counsel."[46]

(b) Dixon contends that the state improperly commented on Dixon's silence during cross-examination and later during closing argument. It is true that a prosecutor improperly comments on the defendant's silence where the prosecutor questions him regarding why he did not come forward to talk to police after a crime has taken place.[47] "However, where, as here, a defendant is not silent but makes a statement, the [s]tate can impeach his trial testimony with inconsistencies or omissions in his pre-trial statement."[48] In the case at bar, the state's questions on cross-examination and the state's argument in closing dealt not with Dixon's silence, but with Dixon's statements to police, in which he denied any sexual contact with Battaglia. During cross-examination and in its closing statement, the state questioned the contradiction between Dixon's earlier statements to police and his later contention, at trial, that he and Battaglia had engaged in consensual sex. "The trial court correctly permitted the [s]tate to cross-examine [Dixon] about the dramatic difference between his trial testimony and his pre-trial statement."[49] Trial counsel's failure to make a meritless objection to these arguments by the state did not amount to ineffective assistance of counsel.[50]

We note that the test regarding effective assistance of counsel is to be "not errorless counsel, and not counsel judged ineffective by hindsight, but counsel rendering reasonably effective assistance."[51] Applying this principle to the present case, where the jury acquitted Dixon on one of the four charges against him,[52] we cannot say that Dixon was deprived of his right to effective assistance of counsel on the ground that counsel failed to object to the jury charge at issue or the arguments or questions posed by the state. The trial court's finding on this issue is not clearly erroneous and must be affirmed.

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

---

[46] (Citation omitted.) *Walley v. State*, 298 Ga. App. 483, 486 (3) (680 SE2d 550) (2009).

[47] *Jackson*, supra, 282 Ga. at 497 (2).

[48] (Citations omitted.) *Pye v. State*, 269 Ga. 779, 786-787 (14) (505 SE2d 4) (1998). Accord *Williams v. State*, 261 Ga. App. 410, 415 (5) (582 SE2d 556) (2003).

[49] *Pye*, supra at 787 (14).

[50] See *Walley*, supra.

[51] (Punctuation and footnote omitted.) *Martin v. State*, 300 Ga. App. 419, 421 (3) (685 SE2d 399) (2009).

[52] See id. Accord *Powell v. State*, 272 Ga. App. 628, 630 (2) (612 SE2d 916) (2005) (jury's acquittal on some charges against defendant strongly supports conclusion that trial counsel rendered reasonably effective assistance).

DECIDED APRIL 7, 2010.

*Edwin J. Wilson*, for appellant.

*Daniel J. Porter*, District Attorney, *Carole Cox*, Assistant District Attorney, for appellee.