In the Supreme Court of Georgia

Decided:        June 20, 2016

S16A0150.  MURPHY v. THE STATE.

THOMPSON, Chief Justice.

Following a jury trial, appellant Sheree Dionne Murphy was found guilty

of five counts of felony murder, aggravated battery, arson in the first degree, and

cruelty to a child, all of which charges were related to a motel fire resulting in

the deaths of five people.[1]  She was sentenced to life in prison, and she now

appeals from the denial of her motion for new trial, asserting, among other

---

[1] The crimes occurred on June 7, 2007.  On June 17, 2009, appellant was indicted by a Clayton County grand jury on five counts of malice murder, five counts of felony murder, two counts of aggravated battery, arson in the first degree, cruelty to a child in the first degree, and battery.  Following a jury trial on December 5-13, 2011, appellant was found guilty of all five felony murder counts, one count of aggravated battery, arson in the first degree, and cruelty to a child.  She was acquitted of the remaining charges.  On January 30, 2012, the trial court sentenced appellant to five consecutive terms of life imprisonment on the felony murder counts and 20 years for aggravated battery to run concurrent with her life sentences.  The trial court directed a verdict on the battery count and one count of aggravated battery.  The verdicts for arson and cruelty to a child merged into the felony murder counts.  Appellant filed a motion for new trial on December 20, 2011, which was amended on August 20, 2013, and denied on January 13, 2014.  Appellant's notice of appeal was filed on January 23, 2014.  The case was docketed in this Court for the January 2016 Term and orally argued on February 9, 2016.

things, that she was denied her constitutional right to be present at all critical stages of the proceedings, that the State failed to provide her with notice prior to trial of an expert opinion, see OCGA § 17-16-4 (a) (4), and that the guilty verdicts were the result of (1) extrajudicial information improperly introduced to jurors during their deliberations and (2) an outside influence that caused a deliberating juror to surrender her vote for acquittal. After carefully reviewing the record, we find no reversible error and affirm appellant's convictions.

1. The evidence presented at trial authorized the jury to find that on June 7, 2007, appellant, who was upset with a drug dealer because he would not "front" her drugs, poured an accelerant on and set fire to a stack of mattresses placed in a stairwell directly under the second floor motel room where the drug dealer lived. Then fourteen-year-old Shae'von Butler lived on the second floor of the same motel with her mother, Shakita Jones, her siblings, Devon Butler, Jr. and Desha Butler, and her stepfather, Fred Colston, Jr. Shae'von's uncle, Melvin Jones, was also staying at the motel with the family. Shae'von and her family members were unable to exit their room before being trapped in the bathroom by fire and smoke, and everyone except Shae'von died from smoke inhalation. Shae'von suffered severe burns to her face, hands, shoulders, and

leg.

Witness Starla Leigh Carr testified that on June 6, 2007, the day before the fire, she saw appellant, who appeared angry, coming from the motel. Appellant told Carr she was tired of how people treated her because no one would front her drugs and that she (appellant) would come back and "burn this motherf----- down."[2] Appellant spent that night at Carr's apartment, located near the motel, but she left between 3:00 a.m. or 4:00 a.m. and did not return until later that morning. At around 7:15 a.m., another witness saw appellant and a man walking up to the motel. Appellant was carrying a black plastic bag and had a lighter and cigarettes. This witness asked appellant for a cigarette then saw her walk toward the back of the motel where the mattresses were located. About 15 minutes later, the motel was on fire. Around 11:00 a.m., appellant told another witness that the motel was on fire and that it started when someone set fire to mattresses. A witness with whom appellant was incarcerated while awaiting trial testified that appellant told her she set the motel fire because she was upset

---

[2] Another witness, Natasha Allen, saw appellant at the Chevron gas station next to the motel that evening. Appellant asked Allen and her friend for a ride, but when the friend refused, appellant said she was going to "burn the bitch up."

with victim Colston about drugs.

During their investigation, police went to a Chevron gas station near the motel and discovered a can of Ronsonol brand lighter fluid was missing from the store's shelf. Surveillance video showed an individual matching appellant's height and clothing descriptions entering the store at 6:41 a.m. on the day of the crimes and walking to the area where the lighter fluid was displayed. Another video showed an individual walking across the motel parking lot at 6:59 a.m. carrying something under her arm. After dogs trained to indicate the presence of chemical accelerants alerted at the rear of the motel near the mattresses and the stairwell leading to the second floor, fire investigators collected and tested six samples. Two samples, one collected from the top layer of the mattresses and the other from the concrete in the same area, gave positive responses for a medium petroleum distillate. Other tests conducted by the State indicated that the Ronsonol lighter fluid contained a light petroleum distillate and that the flames from the burning mattresses would have reached a height of 23-31 feet, a height consistent with expert testimony offered by the State to explain how the fire could have spread from the first floor stairwell to the second floor of the motel. The same expert opined that the motel fire originated in the mattresses,

4

was set by human hands, and an ignitable liquid may have been used.[3]

Appellant denied starting the fire and attempted to show that the fire originated on the motel's second floor or in the attic and that the medium petroleum distillate found in the tested samples may have been insecticide applied at the motel by a pest control company or charcoal lighter fluid used by motel residents in their charcoal grills.

Although appellant does not specifically challenge the sufficiency of the evidence supporting her convictions, we conclude that, when viewed in the light most favorable to the verdicts, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find her guilty beyond a reasonable doubt of the crimes for which she was convicted. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Appellant contends her inability to hear and participate in several bench conferences during jury selection violated her constitutional right to be

---

[3] When asked about the defense theory that the fire originated in the motel attic, one State expert testified that he considered this theory but eliminated it, noting that eyewitnesses would have seen smoke coming out of the attic if the fire originated there. Instead, witnesses described the fire as being in the back of the motel on the walkway or breeze way and concentrated on the second floor or on top of the motel coming from the outside and going in.

present and to see and hear all proceedings during her trial. See Smith v. State, 298 Ga. 406, 409 (2) (782 SE2d 269) (2016). It is well-established that proceedings involving the selection of a jury are considered "critical stage[s] at which the defendant is entitled to be present," Sammons v. State, 279 Ga. 386, 387 (612 SE2d 785) (2005), and that a defendant who is present in the courtroom but who does not participate in a bench conference at which a juror is discussed and dismissed is not "present" to the extent required under the federal and state constitutions. See Tennessee v. Lane, 541 U.S. 509, 523 (124 SCt 1978, 158 LE2d 820) (2004) ("The Due Process Clause and the Confrontation Clause of the Sixth Amendment … both guarantee to a criminal defendant … the 'right to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings.'") (quoting Faretta v. California, 422 U.S. 806, 819, n. 15 (95 SCt 2525, 45 LE2d 562) (1975)); Zamora v. State, 291 Ga. 512, 518 (731 SE2d 658) (2012) (recognizing defendant's right to be present during bench conference where dismissal and removal of juror were discussed). Compare Parks v. State, 275 Ga. 320 (565 SE2d 447) (2002) (holding that defendant's right to be present does not extend to bench conferences on "legal" and "scheduling" issues in which defense counsel

participated and to which defendant could not have made a meaningful contribution).

This right belongs to the defendant, however, and "the defendant is free to relinquish that right if he or she so chooses. 'The right is waived if the defendant personally waives it in court; if counsel waives it at the defendant's express direction; if counsel waives it in open court while the defendant is present; or if counsel waives it and the defendant subsequently acquiesces in the waiver.'" Ward v. State, 288 Ga. 641, 646 (706 SE2d 430) (2011) (citation omitted). See also Zamora, 291 Ga. at 518. Acquiescence may occur when counsel makes no objection and a defendant remains silent after he or she is made aware of the proceedings occurring in his or her absence. See Ward, 288 Ga. at 646 ("Acquiescence 'means a tacit consent to acts or conditions, and implies a knowledge of those things which are acquiesced in'"); Jackson v. State, 278 Ga. 235, 237 (3) (599 SE2d 129) (2004) (concluding that defendants acquiesced in proceedings occurring in their absence when counsel made no objection and defendants remained silent after subject of in-chambers proceeding was brought to their attention); Holsey v. State, 271 Ga. 856, 860-861 (5) (524 SE2d 473) (1999) (defendant acquiesced in proceedings occurring

7

during jury visit to crime scene in his absence when trial court raised in his presence the issue of the jury's questions during the site visit and the trial court's response and neither counsel nor defendant objected to the proceeding).

We have no difficulty concluding in this case that appellant acquiesced in her absence from the challenged bench conferences. Our review of the record demonstrates these conferences occurred during jury selection, at a time when the trial judge and counsel were discussing potential motions to strike venire members following the general voir dire. While appellant clearly had the right to be present for and to hear the matters discussed in the bench conferences, appellant was in the courtroom when, at the conclusion of each bench conference, the trial judge asked for motions to strike members of the panel that had just been questioned, counsel stated their reasons for wanting to strike a particular member for cause or their objection to opposing counsel's motion to strike, and the trial court announced its ruling. On each such occasion, no objection was made by defense counsel to appellant's absence, and appellant, who was aware of the announced procedure for selecting a jury,[4] witnessed the

---

[4] Before jury selection began and while appellant was in the courtroom, the trial judge instructed counsel that they would be allowed to ask general questions of each panel, followed by specific questions of individual venire members. At the conclusion of all

8

bench conferences, and heard the discussions concerning the challenged members' qualifications and the judge's rulings, remained silent. Appellant's failure to voice any objection to her absence from the bench conferences, either directly or through counsel, constituted acquiescence to her absence. See Smith, 298 Ga. at 409-410 (2) (concluding that defendant acquiesced in removal of juror during his absence where he knew about the process by which jurors could be removed and was present when juror's removal was discussed, yet he raised no objection); Heywood v. State, 292 Ga. 771, 774-775 (743 SE2d 12) (2013) (holding that defendant acquiesced to counsel's waiver of right to be present at bench conference where trial judge advised everyone in courtroom, including defendant, about the topic of the bench conference and defendant raised no objection to his absence); Wilson v. State, 274 Ga. 637, 639 (3) (555 SE2d 725) (2001) (holding that defendant acquiesced in in-chambers conference occurring in his absence when trial court discussed the subject of the conference and its ruling and neither defense counsel nor defendant raised an objection).

---

questioning, the court further explained, counsel would be allowed to make their motions to strike. After defense counsel requested that venire members be seated in the jury box for individual questioning, the judge announced, in appellant's presence, that the procedure would be amended to allow counsel to raise their motions to strike at the conclusion of questioning of each panel.

Accordingly, this enumeration is without merit.

3. As part of its case in chief, the State called Dr. Najam, a forensic chemist, to provide expert testimony pertaining to the fire's ignition point and the presence of an accelerant, otherwise known as an ignition source, on the mattresses stored under the motel stairs. Because, as previously stated, testing showed that Ronsonol brand lighter fluid contained a light petroleum distillate and the samples taken from the mattresses and concrete in the rear stairwell of the motel indicated the presence of a medium petroleum distillate, the prosecutor asked Dr. Najam whether a light petroleum distillate under attack of fire could change into a medium petroleum distillate. He responded that it was possible. On-cross-examination, Dr. Najam admitted (1) that he found no match for Ronsonol lighter fluid on the tested samples; (2) that many commercial products, including cleaning fluids and pesticides, contain medium petroleum distillates; and (3) that his written report did not contain any reference to his opinion that the exposure of a light petroleum distillate to intense heat could alter the chemical composition of the light petroleum distillate. He also clarified that he was not rendering an opinion that Ronsonol lighter fluid was the ignition source at the motel fire, only that it was a possible ignition source.

10

Appellant contends the trial court erred by allowing Dr. Najam to provide his opinion regarding the change in composition of a light petroleum distillate when exposed to sufficient heat because this aspect of his opinion was not reduced to writing and made available to defense counsel at least ten days prior to trial as required by OCGA § 17-16-4 (a) (4). The State asserts it did not violate OCGA § 17-6-4 (a)(4)'s notice requirements because the question which elicited the challenged opinion -- whether a light petroleum distillate under attack of fire can transform into a medium petroleum distillate – was a permissible hypothetical question. We find no reversible error.

As an initial matter, we reject the State's argument that it had no duty to disclose the challenged portion of Dr. Najam's expert opinion which the prosecutor admitted she learned of before trial. OCGA § 17-16-4 (a) (4) requires the prosecuting attorney, no later than 10 days prior to trial or as otherwise ordered by the court, to disclose to the defense a written report or summary of its expert's findings and conclusions.[5] Thus, although the State

---

[5] OCGA § 17-16-4 (a) (4) provides, in pertinent part:
The prosecuting attorney shall, no later than ten days prior to trial, or as otherwise ordered by the court, permit the defendant … to inspect and copy or photograph a report of any physical or mental examinations and of scientific tests or experiments, including a summary of the basis for the expert opinion

11

may have been permitted to elicit Dr. Najam's hypothetical opinion by asking him to assume facts admitted into evidence at trial, see Peters v. State, 268 Ga. 414, 415 (1) (490 SE2d 94) (1997), it still was required under OCGA § 17-16-4 (a) (4) to provide timely notice of Dr. Najam's opinion to defense counsel. See Heywood, 292 Ga. at 777 (4) (b).

Our inquiry does not end here, however, because the State's failure to comply with OCGA § 17-16-4 (a) (4) does not result in the automatic exclusion of the testimony at issue. The State would have been prohibited from introducing such evidence only upon a showing of both prejudice to appellant and bad faith by the State. See OCGA § 17-16-6;[6] Thompson v. State, 295 Ga.

---

rendered in the report, or copies thereof, if the state intends to introduce in evidence in its case-in-chief or in rebuttal the results of the physical or mental examination or scientific test or experiment. If the report is oral or partially oral, the prosecuting attorney shall reduce all relevant and material oral portions of such report to writing and shall serve opposing counsel with such portions no later than ten days prior to trial.

[6] OCGA § 17-16-6 provides, in pertinent part:

If at any time during the course of the proceedings it is brought to the attention of the court that the state has failed to comply with the requirements of this article, the court may order the state to permit the discovery or inspection, interview of the witness, grant a continuance, or, upon a showing of prejudice and bad faith, prohibit the state from introducing the evidence not disclosed or presenting the witness not disclosed, or may enter such other order as it deems just under the circumstances.

12

96, 101 (757 SE2d 846) (2014); <u>Tucker v. State</u>, 222 Ga. App. 517, 518 (3) (474 SE2d 696) (1996). Pretermitting the question of whether the State acted in bad faith, we conclude appellant has not met her burden of showing she was sufficiently prejudiced by the State's failure to provide timely notice. It is undisputed that Dr. Najam was included on the State's witness list and that his written report, which included his opinion that the tested samples indicated the presence of a medium petroleum distillate and that Ronsonol lighter fluid contained a light petroleum distillate, were provided to defense counsel prior to trial. Although Dr. Najam's opinion pertaining to the State's theory of the transformation of a light petroleum distillate was not included in the State's disclosure, appellant, on motion for new trial, made no showing of what additional evidence she would have presented or how the defense strategy would have materially changed had she been given timely notice of this undisclosed opinion, an opinion with which her own fire investigation expert, Phillip Friday, essentially agreed.[7] And Dr. Najam's opinion merely indicated the possibility

---

[7] Mr. Friday agreed at the motion for new trial hearing that chemicals can change from "being in one group to another group" with a "catalyst" and explained that although he possessed this knowledge prior to trial, he did not tell defense counsel and defense counsel never asked whether such a transformation was possible.

of such a transformation. Under these circumstances, the trial court did not abuse its discretion by allowing Dr. Najam to testify regarding the changing characteristics of a light petroleum distillate exposed to intense heat.[8] See Leger v. State, 291 Ga. 584, 587 (2) (a) (732 SE2d 53) (2012) (trial court did not abuse its discretion by admitting DNA evidence not disclosed in compliance with the requirements of OCGA § 17-16-4 (a) (4) where defendant failed to articulate what prejudice he suffered that would have been cured by timely disclosure); Guild v. State, 236 Ga App. 444, 446 (4) (512 SE2d 343 (1999) (defendant was not prejudiced by State's failure to provide timely notice of scientific report showing seized contraband tested positive for cocaine and marijuana where defendant was charged with possession of both substances, witness who performed the test was included on State's witness list, and record contained no evidence that admission of report impaired defendant's strategy).

4. Nor did the trial court abuse its discretion by admitting a limited

---

[8] In the absence of a showing of sufficient prejudice, we similarly find no reversible error in the trial court's decision to deny appellant's request for a continuance. See Jones v. State, 290 Ga. 576, 577-578 (2) (722 SE2d 853) (2012) (remedy fashioned by a trial court to cure the State's failure to comply with a statutory discovery requirement is reviewed on appeal only for abuse of discretion); State v. Dickerson, 273 Ga. 408, 411-412 (2) (542 SE2d 487) (applying harmless error analysis to trial court's denial of request for continuance based on the State's failure to disclose information in compliance with OCGA § 17-16-8 (a)).

number of photographs depicting the location of the victims' bodies at the crime scene and post-autopsy photographs of the victims' lungs. These photographs were admissible because they were relevant and material to the State's theory that the victims died of smoke inhalation and their probative value was not outweighed by their tendency to unduly prejudice the jury. See Zamora, 291 Ga. at 514 (holding that post-autopsy photographs were admissible because they showed a material fact apparent only due to autopsy); Stokes v. State, 289 Ga. 702, 706 (4) (715 SE2d 81) (2011) (finding no abuse of discretion in trial court's decision to admit photographs of infant's fatal injuries where photographs served as part of the basis of medical expert's opinion regarding the mechanism of death). For the same reason, it was not error to admit in evidence a 911 recording in which a victim stated he could not breathe and that the fire was coming through the bathroom door. Evidence that the fire was coming through the door, as opposed to the motel roof, was relevant to establish the fire's origination point and evidence that a victim was having difficulty breathing, like the admitted post-autopsy photographs, was relevant to show the cause of death.

5. Appellant contends her convictions must be reversed because of the

15

actions of one juror during jury deliberations.  We disagree.

The defense learned through its post-trial investigation that a juror, juror Toale, lit a cigarette lighter during jury deliberations to show jurors that fire travels upward.  On motion for new trial, appellant asserted that Mr. Toale's demonstration constituted an experiment which improperly introduced to jurors extrajudicial information, and she offered four juror affidavits in support of her argument.  See Turner v. Louisiana, 379 U. S. 466, 472-473 (85 SCt 546, 13 LE2d 424) (1965) ("In the constitutional sense, trial by jury in a criminal case necessarily implies at the very least that the 'evidence developed' against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel."); Bobo v. State, 254 Ga. 146 (1) (327 SE2d 208) (1985) (finding defendant was prejudiced when two jurors communicated to other jurors their personal observations from unsanctioned visits to the crime scene).  The trial court refused to consider the juror affidavits but allowed appellant to place them into the record for purposes of appeal.  Appellant challenges both the trial court's decision not to admit these affidavits and its denial of her claim of improper experimentation.

16

Our analysis of this enumeration of error begins with the recognition that appellant's trial took place in 2009, a time at which the former Georgia Evidence Code was still in effect.[9] Under the law in effect at that time, as a general rule, jurors were not allowed to impeach their own verdict, and for this reason, judges could, in most circumstances, act within their discretion and decline to consider juror affidavits offered for the purpose of impeaching a verdict. See OCGA § 17-9-40 ("after [the jury's verdict] has been received, recorded, and the jury dispersed, it may not be amended in matter of substance, either by what the jurors say they intended to find or otherwise"); former OCGA § 17-9-41 ("The affidavits of jurors may be taken to sustain but not impeach their verdict."). See also Henley v. Smith, 285 Ga. 500, 503-504 (2) (678 SE2d 884) (2009) (trial court did not abuse its discretion by refusing to consider juror affidavit in ruling on claim that verdict was based on evidence not presented at trial); Spencer v. State, 260 Ga. 640, 643 (3) (398 SE2d 179) (1990) (trial court did not abuse its discretion by refusing to consider juror affidavit where there was no showing that the alleged racial bias of two jurors caused jurors to

_____

[9] Appellant's reliance on OCGA § 24-6-606 (b), a provision in the new Evidence Code effective January 1, 2013, which allows a juror to testify "whether extraneous prejudicial information was improperly brought to the juror's attention," therefore, is misplaced.

17

convict). As originally stated in Williams v. State, 252 Ga. 7, 8 (1) (310 SE2d 528) (1984) (citation and punctuation omitted):

> [T]o allow a jury verdict to be upset solely because of such [extra-record] statements goes very far toward impugning the sanctity of jury deliberations, undermining the finality of jury verdicts, and subjecting jurors to post-trial harassment. Therefore, we will not allow a jury verdict to be upset solely because of such statements unless the statements are so prejudicial that the verdict must be deemed inherently lacking in due process.

At the same time, the general rule prohibiting the use of juror affidavits to impeach a verdict could not override a defendant's right to a fair trial. See Turpin v. Todd, 268 Ga. 820, 823 (1) (c) (493 SE2d 900) (1997) ("the general rule against impeaching verdicts must succumb to the defendant's right to a fair trial"). Juror affidavits, therefore, could be considered by a trial court to impeach a verdict where it was alleged that "a juror communicate[d] sufficiently prejudicial extra-judicial evidence to other jurors such that there is a reasonable probability that the extra-judicial evidence contributed to the conviction." O'Donnell v. Smith, 294 Ga. 307, 310 (1) (751 SE2d 324) (2013). See Henley, 285 Ga. at 503.

We find it unnecessary to decide here whether the trial court abused its discretion by refusing to consider the proffered affidavits because our review of

18

the affidavits and the record shows that Mr. Toale's use of his lighter during deliberations did not introduce prohibited extrajudicial information to the jury. Mr. Toale stated in his affidavit that he had prior experience investigating fires and that he lit his lighter in the jury room to illustrate that fire generally flows upward, the same opinion offered by experts for both the State and defense at trial.[10] It is not error for jurors to bring their past experiences and learning into deliberations to provide context and insight that allow the evidence and arguments presented at trial to be thoroughly examined. See Martin v. State, 298 Ga. 259, 293 (16) (779 SE2d 342) (2015); Sears v. State, 270 Ga. 834, 840 (514 SE2d 426) (1999). Georgia courts, in this regard, have found appropriate jurors' statements during deliberations regarding a prior at-home experiment pertaining to how the slide on a handgun works, see Watkins v. State, 285 Ga. 355, 356 (1) (676 SE2d 196) (2009), and jurors' use of a cup and toy car during deliberations to illustrate the circumstances of an automobile collision, see Gentry v. State, 236 Ga. App. 820, 823 (3) (513 SE2d 528) (1999). As stated in Martin, 298 Ga. at 293, "most jurors in most cases bring *some* previous

_____

[10] As explained in one juror affidavit, Mr. Toale's demonstration, which occurred during a discussion about where the fire started, appeared to be intended to illustrate for other jurors that the fire could not have started in the attic.

19

knowledge to jury deliberations that helps the other jurors understand and evaluate the evidence and arguments presented by the parties at trial, and we find this to be part of the very nature of the constitutionally mandated trial by jury." Mr. Toale's actions, like the juror's explanation in Watkins and the juror's use of props in Gentry, did not introduce prohibited extrajudicial information into the deliberations. They, instead, exemplify the use of one juror's experience based knowledge to assist other jurors in their examination of the evidence and their understanding of the theories offered by expert witnesses at trial.

(b) Appellant also challenges the verdicts based on the post-trial affidavit of juror Burton, a juror who requested during deliberations to be excused from service because her child was sick. Ms. Burton stated in her affidavit that she changed her vote to guilty after the trial court denied her request to be removed because she wanted to get home to her child. Appellant asserts the trial court's refusal to excuse Ms. Burton from service coerced her to change her vote from not guilty, thus coercing the verdicts in this case.

A trial judge is authorized by OCGA § 15-12-172 to replace a juror who "dies, becomes ill, [or for some] other good cause shown to the court is found

20

to be unable to perform his [or her] duty. . . ." A trial judge's decision whether to excuse a juror will not be reversed absent a showing of an abuse of discretion. See Murray v. State, 276 Ga. 396, 398-399 (4) (578 SE2d 853) (2003) ("trial court has discretion to replace a juror with an alternate at any time in the trial, whether before or after submission to the jury"). The record in this case shows that upon receiving a note from Ms. Burton indicating her desire to be removed from the jury, she was questioned by the trial court. Her answers revealed that her son had missed two therapy sessions due to her jury service, and he likely would miss another session if deliberations continued. The State argued that Ms. Burton should be released, and defense counsel, after initially stating that she should not be removed, eventually agreed to "leave it with the Court." Based on its review of relevant law and Ms. Burton's responses, the trial court denied Ms. Burton's request, stating:

> I don't want you to think that either the Court or the parties in this case are unsympathetic to your current situation. . . . Rules of law govern how issues are to be addressed during the course of a trial, including during the jury deliberation process. After consulting with the parties and after my independent review of the law that's applicable to these sorts of circumstances, I am unable to excuse you from the deliberation process at this time.

On this record, we find no abuse of discretion in the trial court's decision

21

not to release Ms. Burton from jury service.  Ms. Burton's reason for wanting to be removed and her answers to the trial court's questions gave no indication that her ability to perform her duties as a juror would be impaired if she was not excused.  See Smith v. State, 266 Ga. 827, 829 (2) (470 SE2d 674) (1996).  She did not claim that an emergency existed.  Compare id. (finding no abuse of discretion in trial court's decision to release seated juror who informed court she could not fulfill her duties as a juror because she had to undergo emergency dental surgery) with Mason v. State, 244 Ga. App. 247, 249 (1) (535 SE2d 497) (2000) (juror's concern about "getting back to her business" was not evidence that she could not perform her duties as a juror and did not amount to legal cause for dismissal from jury service).

Nor do we find any merit in the argument that the trial court's decision not to release Ms. Burton coerced the jury's verdicts.  Nothing in the trial court's statements denying Ms. Burton's request intimated (1) that she should sacrifice her honest beliefs for reasons other than those based on the trial or the arguments of other jurors or (2) that a unanimous verdict was required.[11]

---

[11] We note in this regard that the jury was polled after the verdict was announced, and each juror, including Ms. Burton, confirmed that the announced verdict was their verdict and that it had been rendered freely and voluntarily.

Riggins v. State, 226 Ga. 381, 384-385 (174 SE2d 908) (1970), the case cited by appellant in support of her claim that the verdicts were coerced, is, therefore, factually distinguishable.[12]  And while Ms. Burton's affidavit shows that her verdicts may have been motivated, at least in part, by her desire to be home with her child,[13] verdicts may not be impeached merely by showing that not all of the jurors reaching a unanimous verdict were motivated by exactly the same considerations.  See Aguilar v. State, 240 Ga. 830, 832-833 (1) (242 SE2d 620) (1978) (upholding verdict despite affidavits of three jurors stating they agreed

---

[12] Riggins involved a criminal jury trial in which the jury foreman informed the judge during deliberations that the jury's vote stood at 10-2 and had remained that way since the previous day.  The trial judge, in response, instructed jurors: "Well, I don't want anybody to give up their honest convictions in this case, but it occurs [to me that] somebody is being a little unreasonable, stubborn. I don't see how any jurors -- as intelligent as any jurors we could get -- and it's a very expensive operation to hold these trials for a week at a time and the jury ought to be able to reach a conclusion based on the evidence and by a preponderance of the evidence."  We held that the court's re-charge, which "intimated that one or more members of the jury should surrender his or their conviction rather than cause a mistrial," had the effect of coercing the jury to reach a verdict, thus entitling the defendant to a new trial. Riggins, 226 Ga. at 384-385.

[13] Ms. Burton also stated in her affidavit that at one point in the deliberations, she and another juror were the only ones voting not guilty, and as the jury continued its deliberations, the other juror changed his vote.  Mr. Toale explained in his affidavit that before the other hold-out juror, the jury foreman, changed his vote, he (Toale) asked Ms. Burton if she would change her vote to guilty if the foreman did.  She replied that she would, and jurors proceeded to spend half a day convincing the foreman of appellant's guilt.  Five minutes after the foreman was finally convinced of appellant's guilt, Toale stated, Ms. Burton changed her vote.

23

to verdict of guilty on the greater crime because one jury member stated that conviction of the lesser crime would not give the defendant enough punishment). "'Nothing coming from a juror, either directly or indirectly, in the way of a narrative with respect to the manner in which a verdict was arrived at, will be heard to impeach the same.'" Bowman v. Bowman, 230 Ga. 395, 397 (197 SE2d 372) (1973) quoting Southern R. Co. v. Sommer, 112 Ga. 512 (37 SE 735) (1900). Accordingly, we find no merit in appellant's claim that the verdicts were coerced, and it follows, the trial court did not err by denying her motion for new trial on this asserted ground.

Judgment affirmed. All the Justices concur.