## A09A1788. ABERNATHY v. THE STATE.

(685 SE2d 734)

BLACKBURN, Presiding Judge.

Following a jury trial, Hiram Abernathy was convicted on one count each of aggravated battery,[1] aggravated assault,[2] armed robbery,[3] kidnapping with bodily injury,[4] false imprisonment,[5] possession of a firearm during the commission of a crime,[6] and possession of marijuana.[7] He appeals his convictions and the denial of his motion for new trial, arguing that the trial court erred in denying his motion for directed verdict of acquittal on the kidnapping with bodily injury charge, incorrectly instructing the jury on the kidnapping with bodily injury charge, and failing to find that he received ineffective assistance of counsel. For the reasons set forth below, we affirm.

"On appeal, the standard of review for denial of a motion for directed verdict is the same as that for determining sufficiency of the evidence to support a conviction." (Punctuation omitted.) *Terry v.*

---

[1] OCGA § 16-5-24 (a).
[2] OCGA § 16-5-21 (a) (2).
[3] OCGA § 16-8-41 (a).
[4] Former OCGA § 16-5-40 (a), (b) (4).
[5] OCGA § 16-5-41 (a).
[6] OCGA § 16-11-106 (b) (1).
[7] OCGA § 16-13-30 (j) (1).

*State*.[8] In reviewing the sufficiency of the evidence, "the evidence must be construed in a light most favorable to the verdict and [Abernathy] no longer enjoys a presumption of innocence." (Punctuation omitted.) *Dennis v. State*.[9] We do not weigh the evidence or determine witness credibility, but only determine whether a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt. *Jackson v. Virginia*.[10]

So viewed, the record shows that in late 2005 and early 2006, Abernathy filed several reports with the local sheriff's department, claiming that his home had been burglarized and that a few guns and a computer had been stolen. Although no arrests were made, Abernathy believed that Jonathan May, who was an acquaintance of Abernathy's teenage daughter, and several of May's friends had committed the burglaries. Dissatisfied with the sheriff's department's efforts, Abernathy hired his friend, Eric Gibson, to investigate the matter and catch the perpetrators.

On April 29, 2007, a female acquaintance of May and Abernathy's daughter, asked May if he would give her a ride on his four-wheeler to Abernathy's house. As they approached the edge of Abernathy's property, May stopped and expressed his reluctance to go any farther based on his fear that Abernathy held him responsible for the burglaries of Abernathy's home. To assure May that nothing was going to happen, the female acquaintance called Abernathy's daughter on a cell phone and was told that there would be no trouble. Consequently, May and the female drove down the driveway to Abernathy's house. Upon their arrival, Gibson approached, asked May what his name was, and hit him in the face with a pistol after he answered. As a result of the blow, May fell from his four-wheeler. Gibson then struck May again and fired his pistol into the ground next to him before dragging May from the driveway into the yard. Shortly thereafter, Abernathy's daughter told Gibson that she had just spoken to Abernathy on the phone and that he wanted Gibson to detain May until Abernathy returned home from the store.

When Abernathy arrived, he and Gibson took May into the carport, which removed May from the view of Abernathy's neighbors, took May's cell phone and wallet, and began kicking May in the face and ribs. Abernathy also began interrogating May about the burglaries and struck May with a pistol and horse reins when May denied involvement. A few minutes later, Abernathy bound May's hands with zip-ties, bound his feet and covered his eyes with duct

---

[8] *Terry v. State*, 293 Ga. App. 455 (667 SE2d 109) (2008).

[9] *Dennis v. State*, 294 Ga. App. 171 (669 SE2d 187) (2008).

[10] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

tape, and poured gasoline over him. He then dragged May inside the house and stuffed him into a television cabinet, which he nailed shut with two-by-four boards. Abernathy next draped a sheet over the cabinet, so that anyone looking into the house from a window would not be able to see that May was confined, and warned May that he would fill the cabinet "full of lead" if May moved. Thereafter, Abernathy, Gibson, and the two girls left the house to go to a birthday party. When May heard Abernathy and the others leave, he kicked his way out of the cabinet and untied himself. Once outside, he found where Abernathy had moved his four-wheeler and fled on it before losing consciousness and waking up in the hospital, where he was being treated for multiple contusions, a fractured orbital socket, and a perforated eardrum.

Abernathy was indicted on one count each of aggravated battery, aggravated assault, armed robbery, kidnapping with bodily injury, false imprisonment, possession of a firearm during the commission of a crime, and possession of marijuana. Gibson was similarly charged on the same indictment. At Abernathy's trial, May testified regarding the attack and a physician testified regarding the extent of May's injuries. The female acquaintance and Gibson also testified against Abernathy and confirmed May's account of the attack. In addition, members of the sheriff's department testified regarding their investigation of the matter and their recovery of marijuana from Abernathy's home. At the conclusion of his trial, the jury found Abernathy guilty on all counts. Subsequently, Abernathy obtained new counsel and filed a motion for new trial, which the trial court denied after a hearing. This appeal followed.

1. Abernathy contends that the trial court erred in denying his motion for directed verdict of acquittal on the kidnapping with bodily injury charge. Specifically, he argues that the evidence was insufficient to prove the element of asportation. We disagree.

"A person commits the offense of kidnapping when he abducts or steals away any person without lawful authority or warrant and holds such person against his will." Former OCGA § 16-5-40 (a). "For the State to prove the essential element that the defendant has 'stolen away' or 'abducted' the alleged victim, it must show that an unlawful movement, or asportation, of the person has taken place against his will." *Brashier v. State.*[11]

Abernathy argues that the State failed to prove the element of asportation under the new standard established by the Supreme Court of Georgia in *Garza v. State.*[12] This contention is without

---

[11] *Brashier v. State*, 299 Ga. App. 107, 109 (2) (681 SE2d 750) (2009).
[12] *Garza v. State*, 284 Ga. 696 (670 SE2d 73) (2008).

merit. In *Garza*, the Supreme Court abandoned the "slight movement" standard and adopted a test established in *Govt. of Virgin Islands v. Berry*[13] to determine whether the movement at issue constituted asportation as an element of the crime of kidnapping. *Garza*, supra, 284 Ga. at 701-702 (1).[14] The *Berry* test assessed four factors in determining whether the movement of the victim constituted asportation:

> (1) the duration of the movement; (2) whether the movement occurred during the commission of a separate offense; (3) whether such movement was an inherent part of that separate offense; and (4) whether the movement itself presented a significant danger to the victim independent of the danger posed by the separate offense.

Id. at 702 (1). *Garza* reasoned that

> [a]ssessment of these factors will assist Georgia prosecutors and courts alike in determining whether the movement in question is in the nature of the evil the kidnapping statute was originally intended to address — i.e., movement serving to substantially isolate the victim from protection or rescue — or merely a "criminologically insignificant circumstance" attendant to some other crime.

Id. Not all of the elements under the *Berry* test must favor the State in order to prove asportation. See *Henderson v. State*[15] (sufficient evidence supporting asportation despite only minimal movement of victims).

Applying the *Berry* test in this matter, we conclude that the evidence showed that Abernathy's movement of May from his yard to his carport and later from his carport to the television cabinet inside Abernathy's house constituted asportation. Although the

---

[13] *Govt. of Virgin Islands v. Berry*, 604 F2d 221, 227 (IV) (3rd Cir. 1979), superseded in part by statute, *Martinez v. Govt. of Virgin Islands*, 2008 U. S. Dist. LEXIS 107613, *8 (D.V.I. 2008).

[14] We note that House Bill 575 (effective date July 1, 2009) amended OCGA § 16-5-40 and addressed the asportation element of the kidnapping offense, but because that is a substantive change to the law, it has no retroactive effect here.

> As a general rule, a reviewing court must apply the law as it exists at the time the court's opinion is rendered rather than the law prevailing at the time of an arrest. An amendment may be applied retroactively if the changes do not affect constitutional or substantive rights and if the legislature did not express a contrary intention.

(Citation omitted.) *State v. McCabe*, 239 Ga. App. 297, 298 (519 SE2d 760) (1999).

[15] *Henderson v. State*, 285 Ga. 240, 245 (5) (675 SE2d 28) (2009).

duration of both movements was minimal, not all of the *Berry* factors must favor the State in order to prove asportation. See *Henderson*, supra, 285 Ga. at 245 (5); *Brashier*, supra, 299 Ga. App. at 109 (2). Also, while the movement of May to the carport arguably occurred as part of the beginning of the attack by Gibson and Abernathy, it did not constitute an inherent part of the aggravated assault or aggravated battery. See *Flores v. State*.[16] But cf. *Horne v. State*[17] (movement of victim between the time of two separate occurrences of injuries constituted asportation). In addition, the movement of May from the carport to the television cabinet inside of Abernathy's house occurred after the attacks were completed and was not an inherent part of those attacks. See *Brashier*, supra, 299 Ga. App. at 109 (2). Furthermore, both movements created an additional danger to May independent of any of the other offenses. In fact, both served to conceal May from the potential view of Abernathy's neighbors and diminished his opportunity for rescue or escape. See *Henderson*, supra, 285 Ga. at 245 (5); *Brashier*, supra, 299 Ga. App. at 109 (2); *Horne*, supra, 298 Ga. App. at 603 (1); *Flores*, supra, 298 Ga. App. at 575 (1). Thus, the evidence was sufficient to support the conviction of kidnapping with bodily injury beyond a reasonable doubt.

2. Abernathy contends that the court erred in incorrectly instructing the jury on the kidnapping with bodily injury charge. Specifically, he argues that the trial court's instruction on the element of asportation constituted substantial error in light of *Garza* and thus required reversal of his kidnapping with bodily injury conviction. We disagree.

In this matter, the trial court instructed the jury on the asportation element of kidnapping as follows:

> To prove the abduction of another person, the State of Georgia must prove the essential element of asportation. Asportation means, quote, carrying away, closed quote. Only the slightest movement of the alleged victim is required to constitute the necessary essential element of asportation. There is no minimum amount of time that an alleged victim must be held to constitute kidnapping. When there is evidence showing that the victim was moved from one location to another by being pushed, pulled, or shoved by the accused or when there is evidence showing that the victim moved in response to a threat from the accused, this is evidence of asportation sufficient to support a kidnapping conviction even where the movement was only slight.

---

[16] *Flores v. State*, 298 Ga. App. 574, 575 (1) (680 SE2d 609) (2009).
[17] *Horne v. State*, 298 Ga. App. 601, 603 (1) (680 SE2d 616) (2009).

902

The charge given was a correct statement of law at the time of Abernathy's trial. However, as previously noted, in October 2008, our Supreme Court, in *Garza*, supra, 284 Ga. at 702 (1), held that the asportation required to support a kidnapping conviction must consist of more than "slight movement." Applying *Garza* in this case, we conclude that the trial court erred in charging the jury that "slight movement" is sufficient to prove asportation. But this does not end our inquiry.

Although Abernathy did not object to this charge, "where there has been a substantial error in the charge which was harmful as a matter of law, depriving the defendant of a fair trial, we must consider and review the charge regardless of whether an objection was made." *Lester v. State*.[18] See OCGA § 5-5-24 (c).

> The standard for weighing nonconstitutional error in criminal cases is known as the "highly probable test," i.e., that it is highly probable that the error did not contribute to the judgment. Under that test, a reversal is not required if the evidence of guilt is overwhelming in that there is no reasonable probability that the verdict would have been different in the absence of this error.

(Punctuation omitted.) *Shirley v. State*.[19] Here, the evidence was overwhelming and indeed not disputed as to asportation under the new *Garza* standard; three witnesses, including May, testified that May was moved from Abernathy's yard to his carport and later was moved from the carport to inside Abernathy's house. Thus, it is highly probable that the trial court's error in charging the jury that "slight movement" is sufficient to prove asportation did not contribute to the judgment. See *Lester*, supra, 262 Ga. App. at 709 (1); *Shirley*, supra, 259 Ga. App. at 505. Accordingly, the court's error does not require reversal of Abernathy's kidnapping with bodily injury conviction.

3. Abernathy also contends that the trial court erred in denying his claims of ineffective assistance of counsel, arguing that his counsel performed deficiently by failing to object to instances of hearsay testimony from three different witnesses, by failing to object to the admission of the victim's prior consistent statements, and by failing to object to testimony that constituted bad character evi-

---

[18] *Lester v. State*, 262 Ga. App. 707, 708 (1) (586 SE2d 408) (2003).
[19] *Shirley v. State*, 259 Ga. App. 503, 505 (578 SE2d 163) (2003).

dence. These contentions are without merit.

> To establish ineffective assistance of counsel under *Strickland v. Washington*,[20] a criminal defendant must prove (1) that his trial counsel's performance was deficient, and (2) that counsel's deficiency so prejudiced his defense that a reasonable probability exists that the result of the trial would have been different but for that deficiency.

*Kurtz v. State*.[21] "Making that showing requires that [Abernathy] rebut the strong presumption that [his] lawyer's conduct falls within the wide range of reasonable professional assistance." *Simpson v. State*.[22] "As a general rule, matters of reasonable trial tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of counsel." (Punctuation omitted.) *Beck v. State*.[23] "We will not reverse a trial court's findings regarding either the deficiency or prejudice prong of the *Strickland* test unless clearly erroneous." *Kurtz*, supra, 287 Ga. App. at 825.

(a) Abernathy contends that May provided hearsay testimony, to which his trial counsel should have objected. During May's testimony, he was asked by the State prosecutor why he drove the female acquaintance to the edge of Abernathy's property but was hesitant to drive her all the way down to the house. May responded that he was hesitant because he had heard that Abernathy and Gibson were "after" him. Abernathy argues that his trial counsel's failure to object to this hearsay constituted ineffective assistance. We disagree.

"The decision of whether to interpose certain objections is a matter of trial strategy and tactics." (Punctuation omitted.) *Boyt v. State*.[24] "Errors in judgment and tactical errors do not constitute denial of effective assistance of counsel." (Punctuation omitted.) *Mallon v. State*.[25] At Abernathy's motion for new trial hearing, his trial counsel testified that he did not object to this hearsay testimony because he knew that Abernathy had admitted during a recorded interview conducted by the sheriff's department that he thought May was responsible for burglarizing his home. Based on this knowledge, counsel testified that he believed that May's testimony would be corroborated when the State played the recorded interview at a later point during the trial. Such trial tactics and strategy do not

---

[20] *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SC 2052, 80 LE2d 674) (1984).
[21] *Kurtz v. State*, 287 Ga. App. 823, 825 (652 SE2d 858) (2007).
[22] *Simpson v. State*, 278 Ga. 336, 337 (2) (602 SE2d 617) (2004).
[23] *Beck v. State*, 292 Ga. App. 472, 474 (2) (a) (665 SE2d 701) (2008).
[24] *Boyt v. State*, 286 Ga. App. 460, 463 (2) (b) (649 SE2d 589) (2007).
[25] *Mallon v. State*, 266 Ga. App. 394, 395 (597 SE2d 497) (2004).

amount to ineffective assistance of counsel. See *Christian v. State*[26] (counsel's decision not to object to hearsay that was later corroborated by defendant's own statement was sound trial strategy).

(b) Abernathy contends that the female acquaintance also provided hearsay testimony, to which his trial counsel should have objected. During the female acquaintance's testimony, the subject of May's hesitancy to give her a ride all the way down to Abernathy's house was again discussed. The female acquaintance testified that in an attempt to assuage May's concerns, she called Abernathy's daughter, who told her that "nobody was going to say anything to [May], nothing was going to be started if he went down there." Abernathy again argues that his trial counsel's failure to object to this hearsay constituted ineffective assistance. We disagree.

At the motion for new trial hearing, Abernathy's trial counsel testified that he did not object to this portion of the female acquaintance's testimony because he believed that her recounting of Abernathy's daughter's statements was admissible as part of the res gestae of the crime and because he believed that Abernathy's daughter would be testifying at some point during the trial. Evidence therefore supported the trial court's finding that trial counsel's decision not to object was reasonable trial strategy and did not constitute ineffective assistance. See *Christian*, supra, 277 Ga. at 777 (2) (counsel's decision not to object to hearsay based on his belief that the statement may have been admissible as part of the res gestae was reasonable trial strategy).

(c) Abernathy contends that Gibson also provided hearsay testimony, to which his trial counsel should have objected. During the State's direct examination of Gibson, he recounted a telephone conversation that he had had with one of May's friends, who told him that May was one of the people who burglarized Abernathy's house. This friend did not testify at trial. Abernathy argues that his trial counsel's failure to object to this hearsay constituted ineffective assistance. We disagree.

When questioned as to why he did not object to this portion of Gibson's testimony at the motion for new trial hearing, Abernathy's trial counsel testified that he did not believe that the statement was being offered for the truth of the matter asserted and thus was admissible. He further testified that the testimony supported Abernathy's contention that May had, in fact, burglarized his home, and thus worked to his benefit. Evidence thus supported the trial court's finding that this was a reasonable trial strategy and did not consti-

---

[26] *Christian v. State*, 277 Ga. 775, 777 (2) (596 SE2d 6) (2004).

tute ineffective assistance of counsel. See *Mealor v. State*.[27]

(d) Abernathy contends that his trial counsel provided ineffective assistance by failing to object to the admissibility of May's prior consistent statements. We disagree.

At trial, the State introduced an audio recording of the sheriff's department's interview of May, which was conducted one day after the attack, and played the recording for the jury. In the interview, May described the attack, repeating much of what the jury had heard earlier when May testified. Abernathy contends that his trial counsel performed deficiently by failing to object to the admission of the recording, arguing that May's veracity had not been attacked and thus the recording was inadmissible. We disagree.

Although prior consistent statements are generally admissible only in instances where the witness's veracity has been attacked, see *Woodard v. State*,[28] Abernathy's trial counsel testified at the motion for new trial hearing that he chose not to object to the admission of the recording because it showed that some of May's testimony was inconsistent and would therefore undermine May's credibility with the jury. "Such trial tactics and strategy are not susceptible to attacks of ineffective assistance; therefore, this [claim] is without merit." (Citation omitted.) *Boyt*, supra, 286 Ga. App. at 462-463 (2) (a).

(e) Abernathy contends that his trial counsel provided ineffective assistance by failing to object to a sheriff's deputy's testimony that constituted bad character evidence. This contention is without merit.

At trial, one of the sheriff's deputies who investigated the case testified about the circumstances surrounding Abernathy's arrest and her interview of him after he had been brought back from Florida. When asked by the State prosecutor whether Abernathy had requested an attorney prior to the interview, the deputy responded that he had not and that he wanted to make a voluntary statement. She then added, "I even offered to go get a public defender for him, to bring to him there at the office, and his attitude was basically, well, they're not going to do anything for me now than they've done for me up to now or something basically to that effect." Abernathy argues that this testimony implied that he had previously been represented by a public defender and thus constituted bad character evidence, to which his trial counsel should have objected.

Abernathy's contention that this testimony amounted to bad character evidence is belied by the record. Indeed, at the motion for

---

[27] *Mealor v. State*, 266 Ga. App. 274, 278 (b) (596 SE2d 632) (2004).
[28] *Woodard v. State*, 269 Ga. 317, 320 (2) (496 SE2d 896) (1998).

new trial hearing, Abernathy's trial counsel testified that he did not object to this testimony because he did not understand that statement as referring to Abernathy's use of a public defender in another charge but rather believed it was a reference to a public defender's initial involvement in this case. After reviewing the record, we agree that this testimony did not indicate that Abernathy had any prior criminal history. See *Carrie v. State*;[29] *Sneed v. State*.[30] Accordingly, the fact that his trial counsel did not object to this testimony did not constitute ineffective assistance. See *Carrie*, supra, 298 Ga. App. at 57 (1) (b); *Sneed*, supra, 267 Ga. App. at 642 (2) (c).

Given that Abernathy has failed to demonstrate that his trial counsel's performance was deficient, we need not address the prejudice prong of the *Strickland* test. See *Troutman v. State*.[31] Accordingly, the trial court did not err in denying Abernathy's claims of ineffective assistance of counsel.

*Judgment affirmed. Adams and Doyle, JJ., concur.*

DECIDED SEPTEMBER 1, 2009.

*Nathanael A. Horsley*, for appellant.

*Lee Darragh, District Attorney, Theodore G. Cassert, Assistant District Attorney*, for appellee.

---

[29] *Carrie v. State*, 298 Ga. App. 55, 57 (1) (b) (679 SE2d 30) (2009).

[30] *Sneed v. State*, 267 Ga. App. 640, 642 (2) (c) (600 SE2d 720) (2004).

[31] *Troutman v. State*, 297 Ga. App. 196, 198 (3) (676 SE2d 836) (2009).