**THIRD DIVISION**
**ANDREWS, P. J.,**
**DILLARD and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**September 27, 2013**

# In the Court of Appeals of Georgia

A13A1240. ARNOLD v. STATE.

DILLARD, Judge.

In 1999, Bernard Arnold, Sr. pleaded guilty to charges of kidnapping, rape, and possession of a firearm during the commission of a crime and received a sentence of 15 years in prison. After a successful *habeas* challenge, Arnold withdrew his plea and was granted a jury trial. The jury acquitted Arnold of the rape and possession charges, but convicted him on one count of kidnapping, after which the trial court imposed a 20-year sentence. On appeal, Arnold argues that (1) his post-trial sentence constitutes an unconstitutionally vindictive punishment because it is greater than the sentence he received following his guilty plea; (2) the evidence was insufficient to support his kidnapping conviction; and (3) he is entitled to a new trial because the trial court

erroneously charged the jury on the crime of kidnapping. For the reasons set forth *infra*, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the record shows that around 3:00 a.m. on October 17, 1998, the victim—Arnold's ex-girlfriend and the mother of his son—was awakened by the sound of her front door being broken open. She immediately leapt out of bed and sprinted to the closet where she stored her gun, while at the same time calling out to her 16-year-old son in the next room that someone was breaking into the house. And as she was attempting to turn the safety off on the gun, Arnold—who bursted into her bedroom—pushed her onto the bed. A struggle then ensued, resulting in Arnold grabbing the victim (who stood at 4'9" tall and weighed 125 pounds) by the waist and pulling her outside into the yard.

Arnold then proceeded to drag the victim, who was kicking and screaming, around the side of the house and into the neighbor's backyard. The victim's son heard her screams and witnessed Arnold dragging his mother across the neighbor's yard. The victim testified that while she was being dragged around the yard, Arnold gained control of the gun and threatened to kill her.

---

[1] *See Calloway v. State*, 313 Ga. App. 708, 710 (722 SE2d 422) (2012) ("[A]fter a defendant has been convicted, we view the evidence in the light most favorable to the jury's verdict . . . ." (punctuation omitted)).

2

The son, fearing for his mother's safety, grabbed a baseball bat and attempted to go to her rescue, but the victim—who wanted to protect her son from harm—demanded that he stay away. The son then ran back inside the house and attempted to call 911, but the telephone line had been cut, so he dashed across the street to a friend's house, where that friend called 911. The son and his friend, both now armed with baseball bats, returned to the scene and attempted to aid the victim, but she again insisted that they stay away. The victim testified that Arnold raped and orally sodomized her while they were in the neighbor's yard, and then fled "[w]hen he finished." Shortly thereafter, the police arrived.

Arnold was arrested later that day and indicted on the charges of, *inter alia*, kidnapping, rape, and possession of a firearm during the commission of a crime. He subsequently pleaded guilty to each of the charges and was sentenced to 15 years confinement for kidnapping, 20 years for rape, and five years for possession of a firearm. In 2007, the Supreme Court of Georgia granted Arnold *habeas* relief after concluding that the record failed to show he had been informed that by pleading guilty, he was waiving his privilege against compulsory self-incrimination.[2] Consequently, he was permitted to withdraw his guilty plea and receive a jury trial.

---

[2] *See Arnold v. Howerton,* 282 Ga. 66 (646 SE2d 75) (2007).

In August 2008, a jury convicted Arnold on one count of kidnapping, but acquitted him of the rape and possession charges. The trial court sentenced Arnold to serve 20 years in confinement.[3] Arnold filed a motion for new trial, which was denied. This appeal follows.

At the outset, we note that on an appeal from a criminal conviction, we view the evidence in the light most favorable to the jury's verdict.[4] And we do not "weigh the evidence or resolve issues of witness credibility,"[5] but focus solely on whether "the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt."[6] With these guiding principles in mind, we will now address each of Arnold's enumerations of error in turn.

---

[3] The judge who presided over the trial was not the same judge who previously accepted Arnold's plea and sentenced him during the plea hearing.

[4] *Callaway*, 313 Ga. App. at 710.

[5] *Crawford v. State*, 297 Ga. App. 187, 188 (1) (676 SE2d 843) (2009).

[6] *Callaway*, 313 Ga. App. at 710 (punctuation omitted).

1. Arnold first contends that the trial judge was not permitted to increase his sentence for kidnapping from 15 years to 20 years following the trial because to do so was unconstitutionally vindictive under *North Carolina v. Pearce*.[7] We disagree.

In *Pearce*, the Supreme Court of the United States held that due process prohibits vindictiveness from playing any part in a new sentence imposed by a trial court after a criminal defendant has successfully attacked his conviction and obtained a new trial.[8] Consequently, the Court announced a general requirement that "whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear."[9] Otherwise, a presumption

---

[7] 395 U.S. 711 (89 SCt 2072, 23 LE2d 656) (1969) (limited by *Alabama v. Smith*, 490 U.S. 794 (109 SCt 2201, 104 LEd2d 865) (1989)).

[8] *Id.* at 725 (II) (C) ("Due process of law . . . requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial."); *see also State v. Hudson*, ___ Ga. ___, *2 (Case No. S13G0311, decided Sept. 23, 2013) (noting that "due process prohibits trial courts from penalizing criminal defendants for undertaking successful post-trial challenges to their convictions or sentences.").

[9] *Pearce*, 395 U.S. at 726 (II) (C).

5

of vindictiveness arises that "may be overcome only by objective information justifying the increased sentence."[10]

In *Alabama v. Smith*,[11] however, the Supreme Court limited its holding in *Pearce,* concluding that the presumption of vindictiveness has no application to a sentence imposed after a trial that is greater than one imposed after a guilty plea.[12] In reaching this conclusion, the Court reasoned that

> in the course of the proof at trial the judge may gather a fuller appreciation of the nature and extent of the crimes charged[;] [t]he defendant's conduct during trial may give the judge insights into his moral character and suitability for rehabilitation[;] [and] [f]inally, after trial, the factors that may have indicated leniency as consideration for the guilty plea are no longer present.[13]

---

[10] *Texas v. McCullough*, 475 U.S. 134, 142 (III) (106 SCt 976, 89 LE2d 104) (1985) (punctuation omitted).

[11] 490 U.S. 794 (109 SCt 2201, 104 LE2d 865) (1989).

[12] *Id*. at 803; *see also Hudson*, __ Ga. at *7 ("[I]t is now clear beyond question that the evil *Pearce* sought to prevent was sentencing judge vindictiveness, not the mere imposition of an enhanced sentence on retrial or remand.").

[13] *Smith*, 490 U.S. at 801 (citation omitted).

And that is exactly what happened in the case *sub judice*. During the sentencing hearing, the trial judge—who had not imposed the original 15-year sentence[14]—explicitly stated that his decision to impose a 20-year sentence was not a "knee-jerk reaction," but was instead carefully decided after hearing testimony from the victim and her family, and after considering "much more" evidence than was presented at the plea hearing. And indeed, in contrast to the extensive evidence presented at trial, the plea hearing consisted only of the prosecutor's representation that "the defendant did abduct [the victim] without lawful authority or warrant, and hold [the victim] against her will." It follows, then, that there is not a reasonable likelihood that vindictiveness played any role whatsoever in the judge's decision and Arnold's due-process rights were not violated by the imposition of a greater sentence.[15]

---

[14] While our conclusion is, perhaps, bolstered by the fact that the trial judge who imposed the sentence before us on appeal is different from the trial judge who imposed the vacated sentence, we wish to make clear that nothing in this opinion should be construed as suggesting that a trial judge whose sentence is successfully challenged by a criminal defendant is somehow incapable of imposing a subsequent sentence free from any vindictiveness.

[15] *Smith*, 490 U.S. at 801; *Townes v. State*, 298 Ga. App. 185, 190 (679 SE2d 772) (2009) (finding no grounds for presumption of vindictiveness when defendant turned down plea for ten-year sentence and was subsequently convicted and sentenced to 111 years); *Kelley v. State*, 248 Ga. App. 721, 724 (2) (548 SE2d 357) (2001) (holding *Pearce* presumption does not apply when first sentence is imposed after a guilty plea and the second is imposed after trial).

7

2. Arnold next contends that the evidence of kidnapping was insufficient to sustain his conviction. Specifically, he argues that there was insufficient evidence of asportation.[16] We disagree.

A person commits the offense of kidnapping "when such person abducts or steals away another person without lawful authority or warrant and holds such other person against his or her will."[17] At the time of Arnold's conviction in August of 2008, the law permitted the element of asportation to be proven by evidence that the victim was moved in any way, even if only slightly.[18] However, in November of 2008,

---

[16] Arnold also argues that, because the victim had a gun, the evidence was insufficient to show that he abducted her against her will. However, the testimony at trial showed that the victim stood at 4'9" tall, weighed 125 pounds, was unable to turn off the safety on the gun, and was kicking and screaming as Arnold (6'1" tall and 225 pounds) dragged her through the yard. The jury was entitled to conclude from that evidence that the victim did not voluntarily go with Arnold into the yard. *See Parson v. State*, 245 Ga. App. 902, 904 (539 SE2d 234) (2000) (noting that the issue as to whether a victim has been held voluntarily or against her will is an issue for jury resolution).

[17] OCGA § 16-5-40 (a).

[18] *See generally Lyons v. State*, 282 Ga. 588, 591 (1) (652 SE2d 525) (2007) ("The requirement of asportation to prove kidnapping is satisfied if there is movement of the victim, however slight that movement is."); *Mullins v. State*, 280 Ga. App. 689, 690 (1) (634 SE2d 850) (2006) ("[T]he distance which a kidnapper abducts his victim is without legal significance. Only the slightest movement of the victim is required to constitute the necessary element of asportation." (punctuation omitted)).

8

our Supreme Court decided *Garza v. State*,[19] in which it adopted a new test to determine when movement is sufficient to constitute asportation.[20] This test, first articulated by the Third Circuit in *Government of Virgin Islands v. Berry*,[21] requires the consideration of four factors:

> (1) the duration of the movement; (2) whether the movement occurred during the commission of a separate offense; (3) whether such movement was an inherent part of that separate offense; and (4) whether the movement itself presented a significant danger to the victim independent of the danger posed by the separate offense.[22]

---

[19] 284 Ga. 696 (670 SE2d 73) (2008). Even though Arnold was convicted before the decision in *Garza*, by overruling the slight-movement standard, the rule announced in *Garza* marked a substantive change to the law and, therefore, is applied retroactively. *See Hammond v. State*, 289 Ga. 142, 144 (1) (710 SE2d 124) (2011). We note that the General Assembly amended the kidnapping statute in 2009 to provide that slight movement is sufficient to prove asportation. *See* OCGA § 16-5-40 (b); Ga. L. 2009, Act 88, § 1. However, because the crime in the case *sub judice* was committed well before that amendment became effective, *see* OCGA § 1-3-4, the amended statute is not applicable here.

[20] *See Garza*, 284 Ga. at 702 (1).

[21] 604 F2d 221, 227 (IV) (3d Cir. 1979).

[22] *Garza*, 284 Ga. at 702 (1).

In analyzing these factors, it is not necessary that every one be satisfied in the State's favor in order to find asportation.[23] Rather, the heart of *Garza's* analysis is "whether the movement in question is in the nature of the evil the kidnapping statute was originally intended to address—i.e., movement serving to substantially isolate the victim from protection or rescue—or merely . . . attendant to some other crime."[24] This means that, for instance, even a minimal movement that enhances the control of the perpetrator over the victim will constitute asportation when it is not an inherent part of a separate offense.[25]

Here, the evidence of Arnold's movement of the victim was sufficient to sustain the asportation element of the kidnapping conviction. Although the time and

---

[23] *See, e.g.*, *Sipplen v. State*, 312 Ga. App. 342, 343 (1) (718 SE2d 571) (2011) ("Not all of the elements under the *Garza* test must favor the [S]tate to prove asportation."); *accord Abernathy v. State*, 299 Ga. App. 897, 900 (1) (685 SE2d 734) (2009).

[24] *Garza*, 284 Ga. at 702 (1).

[25] *Compare Henderson v. State*, 285 Ga. 240, 245 (5) (675 SE2d 28) (2009) (finding asportation when victims were moved from one room to another after a robbery had been committed), *and Wright v. State*, 300 Ga. App. 32, 34 (1) (684 SE2d 102) (2009) (finding asportation when, in the course of a robbery but not necessary to it, victims were placed inside a car), *with Goolsby v. State*, 311 Ga. App. 650, 654 (1) (718 SE2d 9) (2011) (finding no asportation when movement of victim to sofa allowed defendant to have control over her, but such control was necessary to the separate offense).

distance spanned by Arnold's forceful dragging of the victim out of the house, through the yard, and into the neighbor's yard may not have been lengthy, the movement was of sufficient duration to satisfy the first *Garza* factor.[26] Further, the movement did not occur during the commission of a separate offense;[27] rather, the evidence shows the alleged rape (for which Arnold was acquitted) occurred *after* the victim was dragged into the neighbor's yard.[28] Nor was the movement inherent to the alleged rape.[29] And finally, even though the victim's son ultimately awoke and discovered the victim in the neighbor's yard, Arnold enhanced his control over her

---

[26] *See Williams v. State*, 291 Ga. 501, 503 (1) (b) (732 SE2d 47) (2012). *Compare Henderson*, 285 Ga. at 245 (5) ("[T]he movement of the victims from one room to another within the duplex was of minimal duration."); *Garza*, 284 Ga. at 703 (2) (holding victim's fall to the floor and subsequent rise to sit in chair were of minimal duration).

[27] Because the factors are satisfied regardless, we need not decide here whether an offense for which Arnold was acquitted qualifies as a "separate offense" under *Garza*'s second and third factors. *See Williams*, 291 Ga. at 504 (1) (b), n.4.

[28] *See id.* at 503-04 (1) (b) (holding that movement which occurred before victim was beaten did not occur during the commission of aggravated battery offense).

[29] *See Goolsby*, 311 Ga. App. at 655 (2) (holding movement from front door to bedroom where rape was committed was not inherent to the commission of the rape).

11

by taking her out of the house, into the darkness, and away from her son's protection, successfully making any potential intervention by him more difficult.[30]

Because the movement in question here was sufficient in duration, unrelated to a separate offense, and increased the danger to the victim, it was "in the nature of the evil the kidnapping statute was originally intended to address" and not "merely a criminologically insignificant circumstance attendant to some other crime."[31] Consequently, it was sufficient under *Garza* for a jury to find beyond a reasonable doubt that Arnold committed the crime of kidnapping.

3. Finally, Arnold contends that the trial court improperly instructed the jury on the issue of asportation and that he is therefore entitled to a new trial. Although we agree that the charge given by the trial court was erroneous, this error does not entitle Arnold to a new trial.

The charge given to the jury was a correct statement of the law on asportation at the time of Arnold's trial: "Only the slightest movement of the victim is required

---

[30] *See Williams*, 291 Ga. at 504 (1) (holding jury authorized to conclude that taking victim from trailer where other people were present to secluded location outside of trailer in the middle of the night presented significant additional danger to the victim).

[31] *Garza*, 284 Ga. at 702 (1) (punctuation omitted).

to constitute the necessary element of asportation."[32] But because *Garza* applies retroactively, Arnold was entitled to a jury instruction consistent with that rule, rendering the given charge erroneous.[33] We therefore must decide whether it is "highly probable that the error did not contribute to the judgement."[34]

As discussed in Division 2, *supra*, Arnold forcefully dragged the victim from her bedroom, through and out of her house, across her yard, and into her neighbor's yard in the darkness of the early morning hours. His movements of her were not an inherent or integral part of any other offense, and the movements presented a significant danger to the victim in that they enhanced Arnold's control over her and decreased her chance of rescue by her teenage son. Based upon this evidence, we conclude it highly probable that the error of the trial court in not instructing the jury

---

[32] *See* note 17, *supra*.

[33] *See Hammond*, 289 Ga. at 144 (2); *see also Abernathy*, 299 Ga. App. at 902 (2) (concluding jury instruction on "slight movement" given before *Garza* was in error); *Goolsby*, 311 Ga. App. at 655 (3) (holding that jury instruction which comported with the definition of asportation at the time of trial but failed to comport with *Garza* was error).

[34] *Hammond,* 289 Ga. at 144 (2) (punctuation omitted).

13

to consider the *Garza* factors of asportation in no way contributed to the judgment of guilt on the charge of kidnapping.[35]

For all of the foregoing reasons, we affirm Arnold's conviction.

*Judgment affirmed. Andrews, P. J., and McMillian, J., concur.*

---

[35] *See, e.g.*, *id.* at 145 (2) (holding that because evidence was sufficient under *Garza* standard, highly probable erroneous instruction did not contribute to judgment); *Dixon v. State*, 303 Ga. App. 517, 521 (2) (693 SE2d 900) (2010) (same); *Abernathy*, 299 Ga. App. at 902 (2) (same).