**SECOND DIVISION**
**MILLER, P. J.,**
**RICKMAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 12, 2020**

# In the Court of Appeals of Georgia

A19A2227. ALI v. THE STATE.

REESE, Judge.

A Fayette County jury found Faheem Ali ("the Appellant") guilty of multiple offenses, including two counts of armed robbery and two counts of kidnapping.[1] The Appellant seeks review of the order which denied, in part, his motion for new trial, arguing that the evidence was insufficient to support the kidnapping convictions. For the reasons set forth infra, we affirm.

Viewed in the light most favorable to the jury's verdict,[2] the record shows the following. On December 2, 2014, A. L. and M. H. were working as sales

---

[1] See OCGA § 16-5-40.

[2] See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979); *Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004).

representatives at an AT&T store ("store") located in Peachtree City. At around 6:00 p.m. that day while A. L. worked in the front of the store, M. H. was in the breakroom in the back of the store. During that time, a man walked into the store, pointed a gun at A. L. and directed him to the back of the store. A. L. testified that he told the gunman as they walked that his coworker was in the back of the store and the gunman replied: "Just open the door." A. L. opened the door, the gunman instructed M. H. to "get on the ground," and directed A. L. and M. H. into the back of a hallway. The gunman directed A. L. to open the store's safe, then the gunman "put [A. L. and M. H.] in the back corner and just told [them] to sit there and not make any noise." A. L. sat with his back facing the gunman.

Next, A. L. heard a bag open and the safe "ruffled through[.]" He further testified that he also heard the store's door chime and someone walk to the back of the store. A. L. testified that a person wearing a red hoodie came to the opening of the hallway and said "[w]e've got to go." A. L. further testified that the gunman and the second individual, later identified as Bryan Roberts, turned and said "[d]on't say anything[, s]tay down." Roberts and the gunman walked out. A. L. testified that he did not know either individual and that the gunman wore black clothes and gloves, and a baseball cap pulled down, masking his eyes.

M. H. testified that after the gunman told A. L. and him to get on the ground, he (M. H.) immediately got down and the gunman stated "[n]o, not there, [i]n there[.]" so M. H. "went into the room with the safe and got down." He further testified that he knelt down in "the storage area right next to the safe around the corner." M. H. testified that he sat with the safe behind him, and A. L. sat next to him after A. L. opened the safe. M. H. heard trash bags being opened and testified that it sounded like the bags were being loaded with cell phones from the safe. He further testified that the gunman wore all black with a baseball cap and he did not see the second individual that entered the store.

After the robbers left, the two victims contacted the police. Shortly thereafter, A. L. received a phone call from the store's dispatch center verifying that a tracking security device that had been in the store's safe had been moved. Law enforcement conducted a traffic stop of a vehicle and found the security device as well as unopened cell phones still in their packaging, black and red clothing, and trash bags. The Appellant's fingerprints were found on one of the trash bags.

The jury found the Appellant guilty of, inter alia, two counts each of armed robbery and kidnapping. The Appellant filed a motion for new trial. After a hearing, the trial court granted in part and denied in part the motion.[3]

In its order denying the Appellant's motion for new trial, the trial court found that A. L.'s movement was not "'merely incidental' to the armed robbery[.]" Specifically, the trial court found that the movement of A. L. at the direction of the Appellant from the front of the store to the back "made the commission of the armed robbery substantially easier" and "permitted [the Appellant] to both access the safe and maintain control over the store employees." This appeal followed.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict and an appellant no longer enjoys the presumption of innocence. This Court determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*,[4] and does not weigh the evidence or determine witness credibility. Any conflicts or inconsistencies in the evidence are for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support

---

[3] The trial court granted the Appellant's motion to vacate the aggravated assault conviction and merged it with one of the armed robbery convictions.

[4] 443 U. S. at 319 (III) (B).

4

each fact necessary to make out the State's case, we must uphold the jury's verdict.[5]

"The standard of *Jackson v. Virginia*[6] is met if the evidence is sufficient for any rational trier of fact to find the defendant guilty beyond a reasonable doubt of the crime charged."[7] With these guiding principles in mind, we turn now to the Appellant's specific claims of error.

The Appellant argues that there was insufficient evidence to convict him of the two counts of kidnapping. Specifically, he contends that the State did not show asportation of either A. L. or M. H. as required in Counts 3 and 4, respectively, of the indictment.[8] We conclude that there was sufficient evidence for the jury to find,

---

[5] *Walker v. State*, 329 Ga. App. 369, 370 (765 SE2d 599) (2014) (punctuation and footnote omitted).

[6] 443 U. S. at 319 (III) (B).

[7] *Bautista v. State*, 305 Ga. App. 210, 211 (1) (699 SE2d 392) (2010) (citation omitted).

[8] In his appellate brief, the Appellant concedes that the evidence was "very strong" and therefore did not challenge his convictions for the two counts of armed robbery, possession of a firearm during commission of a felony, and possession of a firearm by a convicted felon as charged in Counts 1, 2, 8, and 9, respectively, in the indictment.

beyond a reasonable doubt, that A. L. and M. H. were kidnapped, as alleged in the indictment.

Under OCGA § 16-5-40 (a), "[a] person commits the offense of kidnapping when such person abducts or steals away another person without lawful authority or warrant and holds such other person against his or her will." OCGA § 16-5-40 (a). Pursuant to subsection (b) of that statute, "slight movement" shall be sufficient; provided, however:

> (1) [A]ny such slight movement of another person which occurs while in the commission of any other offense shall not constitute the offense of kidnapping if such movement is merely incidental to such other offense.
> (2) Movement shall not be considered merely incidental to another offense if it:
> > (A) Conceals or isolates the victim;
> > (B) Makes the commission of the other offense substantially easier;
> > (C) Lessens the risk of detection; or
> > (D) Is for the purpose of avoiding apprehension.[9]

---

[9] OCGA § 16-5-40 (b).

6

1. The Appellant argues that (1) the movement of A. L. was "merely incidental to the crime of armed robbery[ ]"; and (2) the State failed to prove the "asportation"[10] or "movement" element as required by OCGA § 16-5-40 (b). Specifically, the Appellant contends that any movement of A. L. that could have been attributed to him was slight, occurred while in the commission of the armed robbery, and was merely incidental. This contention lacks merit.

To determine whether the asportation requirement has been met, the following four factors are to be considered:

> (1) the duration of the movement; (2) whether the movement occurred during the commission of a separate offense; (3) whether such movement was an inherent part of that separate offense; and (4) whether the movement itself presented a significant danger to the victim independent of the danger posed by the separate offense.[11]

> In analyzing these factors, it is not necessary that every one be satisfied in the State's favor in order to find asportation. Rather, the

---

[10] See *Whatley v. State*, 335 Ga. App. 749, 753 (2) (782 SE2d 831) (2016) ("The element of 'abducting or stealing away' — known as asportation — may be proven by evidence of 'slight movement' of the victim.") (punctuation and footnote omitted).

[11] *State v. Clements*, 289 Ga. 640, 647 (2) (c) (715 SE2d 59) (2011) (citing to *Gaza v. State*, 284 Ga. 696, 702 (1) (670 SE2d 73) (2008) (superseded by statute).

7

heart of *Garza*'s analysis is whether the movement in question is in the nature of the evil the kidnapping statute was originally intended to address—i.e., movement serving to substantially isolate the victim from protection or rescue—or merely attendant to some other crime. This means that, for instance, even a minimal movement that enhances the control of the perpetrator over the victim will constitute asportation when it is not an inherent part of a separate offense.[12]

Here, the evidence of the Appellant's movement of A. L. was sufficient to sustain the asportation element of the kidnapping conviction. In the present case, the evidence showed that the Appellant forced A. L. at gunpoint to move from the front of the store to the break room to open the store's safe. This movement of A. L. served to make the commission of the armed robbery substantially easier, because the safe was located in close proximity to the break room. Further, the movement along with the Appellant's instructions to remain silent and stay down isolated and concealed A. L., reducing the likelihood of detection during the robbery and permitting the Appellant and Roberts to complete the robbery.[13] Moreover, prior to leaving the

---

[12] *Arnold v. State*, 324 Ga. App. 58, 62-63 (2) (749 SE2d 245) (2013) (punctuation and footnotes omitted).

[13] See *Taylor v. State*, 344 Ga. App. 122, 131-132 (1) (g) (809 SE2d 76) (2017) (asportation established by the movement of the victim by gunpoint from the front doorway to interior portions of the apartment which concealed and isolated the victim

room, the Appellant and Roberts told A. L. and M. H. to remain silent and stay down. The movement of A. L. to the back corner of the room and the instructions to remain silent and stay down presented a significant danger to A. L. because it enhanced the Appellant's control over him and made any potential intervention more difficult.

As shown above, none of the foregoing movement that formed the basis of the kidnapping charge was necessary or incidental to the armed robbery, which had been completed prior to the kidnapping offense.[14]

2. The Appellant contends that the evidence was insufficient to show the element of asportation as to M. H. The record belies this argument.

M. H. testified that upon entering the breakroom, he was instructed by the gunman to get down. The Appellant then told him to move, and M. H. went into room that contained the safe and "got down." By following the commands of the Appellant,

---

and reduced the likelihood of detection during the commission of an armed robbery); cf. *Floyd v. State*, 342 Ga. App. 438, 443 (1) (b) (803 SE2d 597) (2017) (asportation did not occur when the victim, while held at gunpoint, was not forced to move from his room while he retrieved items and placed them in a bag).

[14] Cf. *Thomas v. State*, 320 Ga. App. 101, 103-104 (1) (739 SE2d 417) (2013) (rejecting argument that movement of victim was merely incidental to the battery offense, where the movement of the victim occurred after the defendant grabbed and lifted the victim).

the movement of M. H. made the commission of the robbery substantially easier, thus allowing the Appellant and Roberts to complete the robbery.[15]

Thus, as shown above, there was sufficient evidence for the jury to find, beyond a reasonable doubt, that A. L. and M. H. were kidnapped, as alleged in the indictment. Consequently, the trial court did not err in denying the Appellant's motion for new trial.

*Judgment affirmed. Miller, P. J., and Rickman, J., concur.*

---

[15] See *Taylor*, 344 Ga. App. at 131-132 (1) (g).